UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REPSOL YPF, S.A., and TEXAS YALE       :
CAPITAL CORP., Individually and On Behalf
of All Others Similarly Situated,           :

                      Plaintiffs,      :      12 Civ. 3877 (TPG)

        - against -           :

THE REPUBLIC OF ARGENTINA,      :

                    Defendant.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANT'S MOTION TO DISMISS THE COMPLAINT</u>

Edward Scarvalone
DOAR RIECK KALEY & MACK
217 Broadway, 7th Floor
New York, NY 10007
Tel. (212) 619-3730

Jonathan A. Willens
JONATHAN A. WILLENS LLC
217 Broadway, 7th Floor
New York, NY 10007
Tel. (212) 619-3749

*Attorneys for Defendant*
*The Republic of Argentina*

# TABLE OF CONTENTS

Preliminary Statement ...........................................................................................1

Complaint Allegations and Background Facts ......................................................3

ARGUMENT ........................................................................................................6

POINT I:     THE COURT LACKS SUBJECT MATTER JURISDICTION
             BECAUSE THERE IS NO EXCEPTION TO FSIA IMMUNITY HERE ......................6

       A. Jurisdictional Principles ..........................................................6

       B. The "Commercial Activity" Exception Does Not Apply .............7

POINT II:    THE ACT OF STATE DOCTRINE
             ALSO REQUIRES DISMISSAL ...................................14

POINT III:   THE COMPLAINT SHOULD BE DISMISSED
             BECAUSE OF IMPROPER VENUE ..............................17

POINT IV:    THE COMPLAINT SHOULD BE DISMISSED
             UNDER FORUM NON CONVENIENS ...........................19

       A. Plaintiffs' Choice of Forum is Entitled To Little Deference ......20

       B. Argentina Is An Adequate Alternative Forum .........................21

       C. The Balance of Private and Public Interest Factors Favors Dismissal........22

             1. The Private Interest Factors Favor Litigation in Argentina ...........23

             2. The Public Interest Factors Favor Litigation in Argentina ..............24

POINT V:     THE COMPLAINT SHOULD BE DISMISSED
             FOR FAILURE TO STATE A CLAIM ..........................25

       A. The Breach of Contract Claim Should Be Dismissed.................26

       B. The Remaining Claims Should Be Dismissed ..........................27

       C. Texas Yale Capital's Claims Should Be Dismissed ...................28

CONCLUSION......................................................................................................29

# TABLE OF AUTHORITIES

**CASES:**

*Acosta v. JP Morgan Chase & Co.*,
219 F.App'x 83 (2d Cir. 2007)..............................................................21, 23

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
2008 WL 612669 (S.D.N.Y. Mar. 3, 2008) ...................................... 22

*Alfadda v. Fenn*,
159 F.3d 41 (2d Cir. 1998)..................................................................... 20

*Allied Bank Int'l v. Banco Credito Agricola de Cartago*,
757 F.2d. 516 (2d Cir. 1985)................................................................. 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................25, 26

*Banco Nacional de Cuba v. Sabbatino*,
376 U.S. 398 (1964)............................................................................ 15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................25, 26

*Braka v. Bancomer, S.N.C.*,
762 F.2d 222 (2d Cir. 1985)............................................................15, 16

*Cabiri v. Gov't of Republic of Ghana*,
165 F.3d 193 (2d Cir. 1999)................................................................... 6

*Cargill Int'l S.A. v. M/T Pavel Dybenko*,
991 F.2d 1012 (2d Cir. 1993)............................................................... 14

*Commissions Imp. Exp. S.A. v. Republic of the Congo*,
2012 WL 1468486 (S.D.N.Y. Apr. 27, 2012)......................................19, 20

*Cortec Indus. v. Sun Holding, L.P.*,
949 F.2d 42 (2d Cir. 1991)..................................................................... 3

*Cottman Transmission Sys. v. Martino*,
36 F.3d 291 (3d Cir. 1994)................................................................... 18

*De Letelier v. Republic of Chile*,
748 F.2d 790 (2d Cir. 1984)................................................................... 8

*Drexel Burnham Lambert Group Inc. v. Comm. of Receivers for A.W. Galadari,*
   12 F.3d 317 (2d Cir. 1993)................................................................................ 10

*EM Ltd. v. Republic of Argentina,*
   473 F.3d 463 (2d Cir. 2007)............................................................................... 9

*Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru,*
   665 F.3d 384 (2d Cir. 2011)............................................................................. 24

*First Nat. City Bank v. Banco Nacional de Cuba,*
    406 U.S. 759 (1972) ....................................................................................... 14

*First Union Nat'l Bank v. Paribas,*
   135 F.Supp.2d 443 (S.D.N.Y. 2001),
   *aff'd sub nom. FUNB v. Arab African Int'l Bank,* 48 F.App'x 801 (2d Cir. 2002)............ 23

*Frederiksson v. HR Textron, Inc,*
   484 F.App'x 610 (2d Cir. 2012) ................................................................. 20, 21

*Garb v. Republic of Poland,*
   440 F.3d 579 (2d Cir. 2006)...................................................................... 7, 8, 10

*Guirlando v. T.C. Ziraat Bankasi A.S.,*
   602 F.3d 69 (2d Cir. 2010) ................................................... 9, 10, 11, 13, 17, 18

*Gulf Ins. Co. v. Glasbrenner,*
   417 F.3d 353 (2d Cir. 2005)............................................................................. 18

*Gulf Oil Corp. v. Gilbert,*
   330 U.S. 501 (1947).......................................................................... 22, 23, 24

*Harris v. Provident Life & Accident Ins. Co.,*
   310 F.3d 73 (2d Cir. 2002)............................................................................... 28

*Hunt v. Mobil Oil Corp.,*
   550 F.2d 68 (2d Cir. 1977)................................................................................. 8

*In re Vitamin C Antitrust Litig.,*
   584 F.Supp. 2d 546 (E.D.N.Y. 2008) ............................................................. 17

*Int'l Hous. Ltd. v. Rafidain Bank Iraq,*
   893 F.2d 8 (2d Cir. 1989)........................................................................... 12, 13

*Iragorri v. United Techs. Corp.,*
   274 F.3d 65 (2d Cir. 2001)...................................................................... 20, 22, 23, 24

*Kensington Int'l Ltd. v. Itoua,*
    505 F.3d 147 (2d Cir. 2007)................................................................. 3, 6, 7, 10, 12, 13, 14

*Konowaloff v. Metro. Museum of Art, New York, N.Y.,*
    702 F.3d 140 (2d Cir. 2012)................................................................................. 15, 16

*Konowaloff v. Metro. Museum of Art, New York, N.Y.,*
    2012 WL 4430856 (S.D.N.Y. Sept. 22, 2011),
        *aff'd*, 702 F.3d 140 (2d Cir. 2012) ............................................................... 16

*Lust v. Nederlandse Programma Stichting,*
    2012 WL 5233617 (2d Cir. Oct. 24,2012)........................................................... 21, 22

*Lyondell-Citgo Ref., LP v. Petroleos de Venezuela, S.A.,*
    2003 WL 21878798 (S.D.N.Y.  Aug. 8, 2003).............................................................. 16

*MasterCard Int'l v. Argencard Sociedad Anonima,*
    2002 WL 432379 (S.D.N.Y. Mar. 20, 2002) .................................................................. 22

*NYSA-ILA Pension Trust Fund v. Garuda Indonesia,*
    7 F.3d 35 (2d Cir. 1993)................................................................................................ 7

*Oceanic Exploration Co. v. Conocophillips, Inc.,*
    2007 WL 420186 (D.D.C. Feb. 5, 2007) .................................................................... 18

*Olberding v. Illinois Cent. R.R.,*
    346 U.S. 338  (1953)................................................................................................... 18

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981)........................................................................... 20, 21, 22, 24

*Pollux Holding Ltd. v. Chase Manhattan Bank,*
    329 F.3d 64 (2d Cir. 2003)................................................................................. 20, 21

*Postol v. El-Al Israel Airlines, Ltd.,*
    690 F.Supp. 1361 (S.D.N.Y. 1988) ........................................................................ 23

*Republic of Argentina v. Weltover, Inc.,*
    504 U.S. 607 (1992)..................................................................................... 11, 12

*Republic of Austria v. Altmann,*
    541 U.S. 677 (2004) .................................................................................................. 15

*Rogers v. Petroleo Brasileiro, S.A.,*
    673 F.3d 131 (2d Cir. 2012) .......................................... 9, 10, 11, 12, 17, 18

*Rong v. Liaoning Province Gov't,*
    452 F.3d 883 (D.C. Cir. 2006) .......................................................................... 8

*Satz v. McDonnell Douglas Corp.*,
    244 F.3d 1279 (11th Cir. 2001 ................................................................................. 22

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993). .................................................................................... 6, 7, 8

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007)................................................................................ 20, 21, 25

*Spar. Inc. v. Info. Resources, Inc.*,
    956 F.2d 392 (2d Cir. 1992)................................................................................ 19

*Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*,
    204 F.3d 384 (2d Cir. 2000)................................................................................. 8

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*,
    241 F.3d 135 (2d Cir. 2001)............................................................................... 18

*Verlinden B.V. v. Central Bank of Nigeria*,
    461 U.S. 480 (1983)................................................................................... 6, 14

*Verosol USA, Inc. v. Florida Shades, Inc.*,
    91 Civ. 6263 (VLB), 1992 WL 696643 (S.D.NY. Sept. 17, 1992) ................................ 26

*Vill. On Canon v. Bankers Trust Co.*,
    920 F.Supp. 520 (S.D.N.Y. 1996) ....................................................................... 28

*Virtual Countries, Inc. v. Republic of South Africa*,
    300 F.3d 230 (2d Cir. 2002)........................................................................ 11, 12

*Warter v. Boston Securities, S.A*,
    380 F.Supp. 2d 1299 (S.D. Fla 2004) .................................................................. 22

*Weltover, Inc. v. Republic of Argentina*,
    941 F.2d 145 (2d Cir. 1991)............................................................................. 11

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*,
    493 U.S. 400 (1990)...................................................................................... 16

*Wye Oak Tech., Inc. v. Republic of Iraq*,
    1:09CV793 (AJT/JFA), 2010 WL 2613323 (E.D. Va. June 29, 2010) ............................ 19

**STATUTES:**

28 U.S.C. § 1391(f) ................................................................................... 17, 18, 19, 20

28 U.S.C. § 1406(a) ................................................................................................ 19

28 U.S.C. §§ 1602-1611 (Foreign Sovereign Immunities Act) ............................................ *passim*

28 U.S.C. § 1604 ...................................................................................................... 6

28 U.S.C. § 1605(a)(2) ......................................................................................... 7, 11

Argentine Law 21,499 ......................................................................................... 1, 4

Argentine Law 26,741 (Hydrocarbons Sovereignty Law) ................................................. 1, 4, 5, 26

**MISCELLANEOUS:**

Executive Decree 530/2012 ...................................................................................... 1, 4

Defendant the Republic of Argentina ("the Republic") respectfully submits this memorandum in support of its motion to dismiss the Class Action Complaint ("Complaint") of plaintiffs Repsol YPF, S.A. ("Repsol") and Texas Yale Capital Corp. ("Texas Yale Capital"), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6).

## **Preliminary Statement**

Repsol is a Spanish company suing a foreign sovereign state, the Republic of Argentina, here in the Southern District of New York.  This is but one of several lawsuits and other legal proceedings that Repsol has filed arising out of the Republic's declaration of public interest, decision to expropriate, and temporary occupation[1] (the "Expropriation Process") of Repsol's controlling interest in YPF S.A. ("YPF" or the "Company"), which is the major oil and gas exploration, development, and production company in Argentina.  Intervention was ordered under Executive Decree 530/2012, with the aim of ensuring the Company's continuity, preserving its assets, and ensuring that Argentina's energy needs are met.  The Expropriation Process was authorized by Law 26,741, the "Hydrocarbons Sovereignty Law," for the purpose of helping the Republic ensure that its future energy needs are satisfied.

Repsol responded to the Republic's initiation of the Expropriation Process by filing lawsuits against the Republic, YPF, and companies doing business with YPF.  Repsol has also brought actions against the Republic and YPF in Argentina and against YPF in Spain, as well as an arbitration proceeding against the Republic before the International Centre for the Settlement of Investment Disputes, expressly challenging the Expropriation Process.[2]

---

[1]   "Temporary occupation" is an Argentine legal procedure regulated by the Republic's Expropriation Law (Law 21,499).  In general terms, it allows the Republic to take temporary control of private property in the public interest.

[2]   The lawsuits brought in Argentina are listed in the accompanying declaration of Carlos Gustavo Pistarini.  The instant lawsuit is just one three lawsuits brought by Repsol that are pending in this Court. *See Repsol YPF, S.A.  v. Republic of Argentina,* No. 12-4018 (TPG); *Repsol, S.A. v. Chevron Corp.,* No.

In this lawsuit, plaintiffs allege that the Republic, after initiating the Expropriation Process, did not launch a tender offer for all of YPF's outstanding shares, as purportedly required by YPF's bylaws.  Plaintiffs' claim is flawed on several legal grounds mandating dismissal.  First, the Court lacks subject matter jurisdiction.  The Republic is immune from suit unless the Complaint establishes an applicable exception to sovereign immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611.  Here, the only exception invoked by plaintiffs – the commercial-activities exception – does not apply.  Plaintiffs' claim is not based upon any commercial activity by the Republic, but upon the Expropriation Process and the Republic's decision not to commence a tender offer.  These are sovereign decisions concerning a core governmental function -- protecting the development of the country's energy resources -- and are not commercial activity.

The Complaint is rife with other legal defects.  The action is barred by the Act of State doctrine, which prohibits this Court from passing judgment on the policies and decisions taken by a foreign government on its home soil.  In addition, plaintiffs have filed this lawsuit in the wrong court.  Because the claim arose in Argentina, not New York, venue is proper (if anywhere) only in the District Court for the District of Columbia.  Even if venue were proper here, reasons of judicial efficiency make Argentina by far the more convenient forum for litigating this dispute, requiring that the Complaint be dismissed on grounds of *forum non conveniens*.  Indeed, Repsol is already litigating claims relating to the Expropriation Process against the Republic in the courts of Argentina.  Finally, none of plaintiffs' claims states a viable claim for relief.  All of the claims are premised on the notion that the By-laws obligate the Republic to make a tender offer, which premise cannot be sustained.

---

12-8799 (TPG).  Repsol filed another lawsuit in New York State court.  *Repsol, S.A. v. The Bank of New York Mellon and YPF Sociedad Anonima*, No. 652653/2012 (Sup. Ct., N.Y. Cty.).

**Complaint Allegations and Background Facts[3]**

YPF is a publicly-held limited liability stock company (*sociedad anónima*) organized under Argentine law.  Complaint ("Cplt.") ¶ 8.  Its Class D shares trade on the Buenos Aires Stock Exchange, *see id.* ¶ 21, as well as on the New York Stock Exchange in the form of ADRs, *id.* ¶ 8.

Repsol is a publicly-held limited liability company (*sociedad anónima*) organized under Spanish law and headquartered in Madrid, *id.* ¶ 5, and a holder of YPF Class D shares.  *Id.* Texas Yale Capital is a financial investment firm headquartered in Texas.  *Id.* ¶ 6.  While the Complaint alleges that Texas Yale Capital "holds shares of YPF," *id.*, Texas Yale's most recent public disclosure to the SEC reflects that Texas Yale is no longer a YPF shareholder.  *See* accompanying declaration of Edward Scarvalone, dated Apr. 26, 2013 ("Scarvalone Dec."), Exh. H.

In 1999, Repsol acquired a controlling interest in YPF through a series of transactions, resulting in Repsol owning significantly more than 50% of YPF's Class D shares.  *Id.* ¶ 5.  Repsol thus controlled the Company – including the composition of the board, management of the Company, and the power to amend the By-laws.  *See* Cplt. ¶ 5; By-laws, art. V, § 11 (composition of board of directors), § 17 (powers of board of directors).[4]

On April 16, 2012, the Republic proposed legislation providing for the expropriation of 51% of YPF's Class D shares, from Repsol.  *Id.* ¶¶ 32, 35.  On that same day,

---

3   While the facts in the Complaint are assumed to be true on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Republic disagrees with many of the allegations and is not conceding any allegation at this stage.  In deciding Argentina's motion to dismiss, the Court may consider matters outside the pleadings.  *See Kensington Int'l Ltd. v. Itoua,* 505 F.3d 147, 153 (2d Cir. 2007) (motion to dismiss under Fed. R. Civ. P. 12(b)(1))*; Cortec Indus. v. Sun Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (motion under Fed. R. Civ. P. 12(b)(6)).

4   For the convenience of the Court, the English translation of the By-laws revised as of 2009 and attached to YPF's 2009 annual report is submitted as Exhibit E to the Scarvalone Declaration.

the Republic intervened in YPF's operations by means of Executive Decree 530/2012, *see id.* ¶ 33, Scarvalone Dec. Exh. A, which was subsequently ratified by both chambers of the Argentine Congress.  The Executive Decree details the Republic's interest in energy self-sufficiency and the Republic's conclusion that taking control of YPF was necessary to reverse the Company's declining levels of production and exploration.  *Id*. Exh. A.

The legislation enacted on May 4, 2013, known as Law 26,741 or the Hydrocarbons Sovereignty Law,[5] addresses Argentina's sovereignty over the supply of hydrocarbons and the expropriation of YPF's Class D shares from Repsol.  Title I of the Law declares Argentina's self-sufficiency in the supply of hydrocarbons to be a national public interest and a priority for the Republic, and states the essential principles of the Republic's hydrocarbon policy.[6]  Title II creates a Federal Council of Hydrocarbons tasked with promoting the Law's objectives.  Title III declares 51% of YPF's Class D shares, held by Repsol, subject to expropriation by the Republic; finds that the expropriation is in the public interest; and provides that the compensation of the expropriated Class D shares will be determined in accordance with the provisions of a general expropriation law (Law 21,499) and the valuation determined by the National Court of Appraisal.  Finally, with the aim of guaranteeing YPF operational continuity, Title III of the Law also provides for the temporary occupation of the shares until the Expropriation Process is completed.

The Republic has not yet taken title to the Class D shares.  Rather, the Republic has merely announced an "intention to acquire" the shares.  Cplt. ¶¶ 3, 61.  The acquisition will not be complete until the compensation amount is determined and paid to Repsol.  *See* Hydrocarbons Sovereignty Law, Title III, arts. 11-12; *see also* declaration of Martín Arecha,

---

[5]   The Complaint refers to the same law as "the Expropriation Law."

[6]   An English translation of the Hydrocarbons Sovereignty Law is attached to the 6-K filed by YPF immediately after the Law went into effect, and submitted as Exhibit B to the Scarvalone Declaration.

dated Apr. 30, 2013 ("Arecha Dec."), ¶¶ 11-20.  The determination of the compensation amount is pending before the Argentine National Court of Appraisal.  *See* Arecha Dec. ¶ 15.

The Hydrocarbons Sovereignty Law grants the Republic the power to exercise all voting rights on the expropriated shares, Cplt. ¶ 39, which, the Complaint alleges, affords the Republic "total and unequivocal control over YPF," *id.*[7]  The Complaint further alleges that by acquiring the right to vote 51% of YPF's Class D shares, the Republic became obligated, under Sections 7 and 28 of YPF's By-laws, to make a tender offer for the remaining Class D shares. *Id.* ¶ 40.  The Republic has not made such a tender offer, which allegedly constitutes a breach of the Republic's contractual obligations under the By-laws.  *Id.*

According to the Complaint, Sections 7 and 28 of the By-laws were created by the Republic, when it was sole and controlling shareholder of YPF, prior to a 1993 public offering of shares in YPF, *id.* ¶¶ 2, 14, because potential investors "insisted on a compensated exit" from YPF should the Republic regain control of the Company, *id.* ¶¶ 2, 13.  The By-laws (including Section 7) have been revised several times since then, including during the 13-year period when Repsol controlled YPF, *see supra* at 3.[8]

The Complaint further alleges that the Republic has "repudiated" its contractual obligations to launch a tender offer, Cplt. ¶ 41, citing a speech given by the Republic's Deputy Economy Minister on April 17, 2012, *id.* ¶ 37, as well as the enactment of the Hydrocarbons Sovereignty Law and "related statements," *id.* ¶ 41, that the Complaint does not identify.

---

[7]  This allegation ignores the fact that Repsol, by virtue of its shareholder interest in YPF (which has increased since the time the Expropriation Process commenced), has appointed a director (Luis García del Río) and alternate director (Pablo Blanco Pérez) to YPF's board of directors.  *See* Scarvalone Dec. Exh. F (YPF Form 6-K, filed June 5, 2012).

[8]  *See, e.g.*, Scarvalone Dec. Exh. C (YPF 6-K, filed Dec. 14, 2007), Exh. D (YPF 6-K, filed Dec. 20, 2007).  The Complaint does not allege which version of the By-laws plaintiffs invoke in this lawsuit and does not provide a translation of the By-laws allegedly breached.

As a consequence of the Republic's alleged breach of its obligation to launch a tender offer for the remaining Class D shares, plaintiffs claim to be deprived of "a compensated exit" from their YPF shareholder interest, *id.* ¶ 2, via the tender offer process provided by the By-laws, *id.* ¶ 42.  Plaintiffs thus seek compensatory damages from the Republic under a panoply of legal theories (breach of contract, anticipatory repudiation, promissory estoppel, and breach of the implied duty of good faith and fair dealing).  *Id.* ¶¶ 51-75.  The Complaint also seeks declaratory relief, as well as an injunction to "strip" or prevent the Republic from exercising voting rights pertaining to the Class D shares that are subject to expropriation.  *See id.* at 26-27 *(*Prayer for Relief, subd. B – E).

## ARGUMENT

## POINT I

## THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS FAIL TO ESTABLISH AN EXCEPTION TO FSIA IMMUNITY HERE

### A.  Jurisdictional Principles

Under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602-1611 (the "FSIA"), a foreign state is "presumptively immune from the jurisdiction of United States courts." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).  "[U]nless a specified exception [set forth in the FSIA] applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."  *Id.* (citing *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488 (1983); *see* 28 U.S.C. § 1604 ("a foreign state shall be immune from the jurisdiction of the courts of the United States . . . except as provided in sections 1605 to 1607 of this chapter").  Plaintiffs bear the burden of demonstrating that this Court has jurisdiction under one of the statutory exceptions to FSIA immunity.  *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 153 (2d Cir. 2007); *Cabiri v. Gov't of Republic of Ghana*, 165 F.3d 193, 196 (2d Cir. 1999).

Plaintiffs have failed to meet their jurisdictional burden here.  The only exception invoked by the Complaint, the "commercial activity" exception, 28 U.S.C. § 1605(a)(2), *see* Cplt. ¶ 9, does not apply here.

## B.  The "Commercial Activity" Exception Does Not Apply.

The commercial activity exception provides that  –

(a)   A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case –
 . . .

    (2)   in which the action is *based upon* [1] a commercial activity carried on in the United States by the foreign state; or upon [2] an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon [3] an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States . . .

28 U.S.C. § 1605(a)(2) (emphasis and brackets supplied).  The statute thus requires that the lawsuit be "based upon" one of three different types of acts or activities.

Accordingly, the "threshold step" in assessing reliance on the commercial activity exception is to "identify the act of the foreign sovereign State that serves as the basis for plaintiffs' claims."  *Garb v. Republic of Poland,* 440 F.3d 579, 586 (2d Cir. 2006).  The statutory requirement that the claim be "based upon" commercial activity means "those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case."  *Nelson*, 507 U.S. at 357.  The phrase thus requires a "degree of closeness" between the commercial activity and "the gravamen of the plaintiff's complaint."  *Kensington*, 505 F.3d at 156; *accord NYSA-ILA Pension Trust Fund v. Garuda Indonesia*, 7 F.3d 35, 38 (2d Cir. 1993) (requiring "significant nexus . . . between the commercial activity in this country upon which the exception is based and a plaintiff's cause of action").  The requisite "degree of closeness" is "considerably greater than

common law causation requirements." *Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 390 (2d Cir. 2000).

      Here, plaintiffs' claim is not "based upon" any commercial activity, and does not satisfy any of the three clauses provided by the FSIA's commercial-activity exception.

      **1.**     **This Action Is Not Based Upon Commercial Activity Carried On in the United States by the Foreign State.**

      Neither the Expropriation Process over YPF's shares, nor the alleged decision by the Republic not to make a tender offer, constitutes commercial activity by the Republic in the United States within the meaning of the exception's first clause.

      In determining whether a particular activity is commercial, courts look to "whether the activity is of the type an individual would customarily carry on for profit," *De Letelier v. Republic of Chile*, 748 F.2d 790, 797 (2d Cir. 1984), or whether the activity is pursuant to "powers peculiar to sovereigns," *Nelson*, 507 U.S. at 360. "[A] state is immune from the jurisdiction of foreign courts as to its sovereign or public acts." *Id.* The expropriation of property, such as the Expropriation Process of YPF's Class D shares by the Republic, "is a decidedly sovereign – rather than commercial – activity." *Garb*, 440 F.3d at 586-87 (citing *Hunt v. Mobil Oil Corp.*, 550 F.2d 68, 73 (2d Cir. 1977)). The Republic does not take control of YPF as an ordinary investor solely interested in profit, but rather as a sovereign nation seeking to develop its natural resources and to achieve and ensure its energy independence. Accordingly, plaintiffs cannot maintain any claim here against the Republic based upon its expropriation of YPF's Class D shares. *Garb*, 440 F.3d at 586-87*; accord Rong v. Liaoning Province Gov't*, 452 F.3d 883, 889-90 (D.C. Cir. 2006).

      For this same reason, plaintiffs cannot establish that the Republic's alleged failure to launch a tender offer constitutes commercial activity. As the Complaint itself makes clear, the alleged obligation to launch a tender offer arises only as a result of the Expropriation Process

- 8 -

over YPF's Class D shares. *See* Cplt. ¶¶ 32-40. Because expropriation is an inherently

sovereign act, so, too, is the Republic's decision about the scope and manner of the Republic's

expropriation, and the obligation that plaintiffs allege to have arisen from the expropriation. *EM*

*Ltd. v. Republic of Argentina*, 473 F.3d 463, 482 (2d Cir. 2007) (sovereign's repayment

obligation arising from borrowing money from International Monetary Fund does not constitute

commercial activity because borrowing from IMF is exercise of inherently sovereign power).

The rule applied by the Second Circuit in *EM Ltd.* is based on sound reason. If a U.S. court took

jurisdiction over the consequences of a clearly sovereign act (like borrowing from the IMF or

expropriating property), then the distinction drawn in the FSIA and its case law between

sovereign and commercial activity would be completely negated, as courts would be subjecting

sovereigns to suit for actions that result from – and are part-and-parcel of – sovereign activity.

      Moreover, plaintiffs cannot establish that their claims are based upon any

commercial activity "carried on in the United States," as the first clause of the commercial

activity exception requires, *see supra* at 7. The Expropriation Process occurred and is occurring

in Argentina, not in the United States. Likewise, the Republic's alleged decision not to launch a

tender offer is an act committed in Argentina, not the United States. Recent FSIA case law from

the Second Circuit firmly establishes this principle: "The decision by a foreign sovereign not to

perform is itself an act, but it is not an act in the United States; it is an act in the foreign

state. . . ." *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 138 (2d Cir. 2012) (quoting

*Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69, 76 (2d Cir. 2010)). Inasmuch as the

Expropriation Process and the alleged decision not to launch a tender offer occurred (and are

occurring) in Argentina, neither act can constitute commercial activity in the United States.[9] Accordingly, the first clause of the commercial-activity exception does not apply here.

### 2. This Action Is Not Based Upon An Act Performed in the United States in Connection With a Commercial Activity of the Foreign State Elsewhere.

The second clause of the commercial-activity exception, *see supra* at 7, requires that the claim be based upon a non-commercial act performed by the foreign sovereign in the United States, *Rogers*, 673 F.3d at 137, *Kensington*, 505 F.3d at 157, which in turn was taken "in connection with" a commercial activity of the sovereign elsewhere. The term "in connection with" as used in the FSIA "is a term of art" that the courts interpret "narrowly." *Garb*, 440 F.3d at 587. Where the act that forms the basis of plaintiff's claim "ha[s] only an attenuated connection" to the commercial activities cited by plaintiff, the "in connection with" requirement is not satisfied. *Drexel Burnham Lambert Grp. Inc. v. Comm. of Receivers for A.W. Galadari*, 12 F.3d 317, 330 (2d Cir. 1993).

Here, plaintiffs' claims are not based upon a non-commercial "act performed in the United States" by the Republic. Neither of the acts upon which the Complaint is based – the Republic's initiation of the Expropriation Process and the alleged decision not to launch a tender offer – was "performed" in the United States. Rather, both acts occurred (and are occurring) in Argentina, not the United States. *See supra* at 9. For that reason alone, this clause is inapplicable. *See Kensington*, 505 F.3d at 157 (finding Second Clause inapplicable because plaintiff failed to allege "that any non-commercial acts performed by [defendant] in the United States . . . formed the basis of its complaint").

---

[9] While the discussion in *Rogers* was within the context of clause two of the commercial activity exception and the discussion is *Guirlando* was within the context of clause three, this distinction "is of no difference since there is no indication that the word 'act' has a distinct meaning in different parts of the 'commercial activities' exception." *Rogers*, 673 F.3d at 138 n.7.

3.      **This Action Is Not Based Upon An Act Outside the United States
In Connection With a Commercial Activity of the Foreign State Elsewhere
That Causes a Direct Effect in the United States.**

The third clause of the commercial-activity exception requires the claim to satisfy three separate requirements:  it must be "(1) based . . . upon an act outside the territory of the United States; (2) that was taken 'in connection with a commercial activity of [the foreign state]' outside this country; and (3) that 'caused a direct effect in the United States.'"  *Weltover, Inc. v. Republic of Argentina,* 504 U.S. 607, 611 (1992) (bracket omitted); *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 236 (2d Cir. 2002).

Plaintiffs' claim fails to satisfy these requirements.  While the Complaint alleges acts occurring outside the United States (*i.e.*, the Expropriation Process and the decision not to launch a tender offer), the Complaint fails to allege that either act was taken "in connection with a commercial activity of [the Republic] elsewhere," 28 U.S.C. § 1605(2).  The Expropriation Process and decision not to make a tender offer are not commercial activity, but rather are part and parcel of the Republic's effort to better manage the country's energy resources and achieve energy independence – which are inherently sovereign (not commercial) functions.  *See supra* at 8-9.

Nor does the Complaint satisfy the third element of the legal standard, which requires establishing that the relevant act "causes a direct effect in the United States."  An effect in the United States is "direct" within the meaning of this provision "if it follows as an immediate consequence" of the defendant's activity.  *Weltover*, 504 U.S. at 618; *Rogers,* 673 F.3d at 138.  By "immediate," it is required that there must be no "intervening element" between the defendant's activity and the effect.  *Guirlando*, 602 F.3d at 74-75 (quoting *Weltover, Inc. v. Republic of Argentina*, 941 F.2d 145, 152 (2d Cir. 1991)).  The immediacy requirement reflects that "Congress did not intend to provide jurisdiction whenever the ripples caused by an overseas

transaction that manages eventually to reach the shores of the United States."  *Virtual Countries,*
300 F.3d at 236; *accord Kensington*, 505 F.3d at 157 (effect in the United States "must be
something more than trivial or incidental").

In the context of claims for breach of contract due to nonperformance, there is a
"direct effect in the United States" if the foreign state does not satisfy a contractual obligation to
perform in the U.S.  *Weltover*, 504 U.S. at 611, 618-19.  Accordingly, there is such a direct effect
only where a contract (i) requires payment to be made in the United States, or (ii) gives the
obligee the right to designate the United States as the place for payment and the obligee
thereafter so designates.  *Weltover*, 504 U.S. at 618-19; *Rogers*, 673 F.3d at 139; *Kensington*,
505 F.3d at 158-59.  By contrast, where the contract does not so require or provide, there is no
direct effect in the U.S.  *Rogers*, 673 F.3d at 139-40 (no "direct effect" in the U.S. because "there
was no requirement that payment be made in the United States nor any provision permitting the
holder to designate a place of performance"); *Kensington*, 505 F.3d at 158; *Int'l Hous. Ltd. v.
Rafidain Bank Iraq*, 893 F.2d 8, 12 (2d Cir. 1989).

Here, the Complaint does not allege that the By-laws' tender offer provisions
require payment to be made in the United States or give shareholders the right to designate the
United States as the place for payment.  *See* Cplt. ¶¶ 15-20; *see also* By-Laws Section 7(f).
Accordingly, any alleged breach of the tender offer obligation by the Republic could not have
caused a "direct effect in the United States."  *See Rogers*, 673 F.3d at 139-40; *Kensington*, 505
U.S. at 158; *Rafidain Bank*, 893 F.2d at 12.

Moreover, plaintiff Repsol is headquartered in Spain, not the United States.  *See*
Cplt. ¶ 5.  As a consequence, any alleged injury that Repsol incurred from not being
compensated for its remaining YPF shares necessarily "occurred outside the United States,"
*Kensington*, 505 F.3d at 158, and Repsol's alleged financial loss therefore cannot satisfy the

"direct effect in the United States" requirement.  *Kensington*, 505 F.3d at 158; *accord Rafidain Bank*, 893 F.2d at 10-11 (losses to foreign plaintiff "occurred elsewhere").

Nor can plaintiffs establish "direct effect" by pointing to Texas Yale's domicile in the United States. *Guirlando*, 602 F.3d at 78 ("the mere fact that a foreign state's activity caused physical or financial injury to a United States citizen is not itself sufficient to constitute a direct effect in the United States").  The Complaint does not allege a contractual requirement to pay shareholders in the United States, *see supra* at 12, and Texas Yale is not a proper plaintiff in any event, *see infra* at Point V.C.

Plaintiffs attempt in vain to satisfy the "direct effect in the U.S." requirement by alleging that the By-laws "mandated" that the tender offer be made in the United States, Cplt. ¶ 19.  The By-laws' provision cited for this proposition – Section 7(f)(iv), which makes the United States one of several places where notice of a tender offer is to be published, *see id.* (notice to be published in "the Argentine Republic, in the City of New York, U.S.A., and any other city where the shares shall be listed") – does not support plaintiffs' allegation that a tender offer must be made in the U.S.  Plainly, requiring that *notice* of a tender offer be published in a particular place is not the same thing as requiring that *the tender offer itself* be made there.[10]

Moreover, publication is but one of eight procedural steps comprising the tender offer process, and all of these procedural steps are collateral to the financial injury claimed by plaintiffs.  *See Guirlando*, 602 F.3d at 80 (defendant bank's transfer of money from U.S. bank may have had direct effect in U.S., but "that transfer is not what caused [plaintiff's] injury").[11]

---

[10]   For the same reasons, plaintiffs cannot establish the direct effect requirement by alleging that the tender offer must comply with "applicable regulations in the jurisdictions where the tender offer takes place" and with "provisions of the stock exchanges where YPF's shares are listed."  Cplt. ¶ 20.

[11]   *See* By-Laws Section 7(f) (requiring advance notification to YPF, approval of bid by holders of Class A shares, mailing notice to each shareholder, publication of notice, calculation of tender price, providing for shareholders to withdraw their shares from the bid, authorization of bid by Argentine

The alleged failure to publish notice in the U.S. is thus, at most, a "trivial or incidental" effect, *Kensington*, 505 F.3d at 157, of the complained-of decision not to make a tender offer, and therefore cannot satisfy the "direct effect in the U.S." requirement.

*          *          *          *

Accordingly, plaintiffs have failed to demonstrate that the FSIA's commercial-activity exception applies here.  The Republic is immune from suit, and the Complaint should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).[12]

**POINT II**

**THE ACT OF STATE DOCTRINE<br>ALSO REQUIRES DISMISSAL**

On its face, the Complaint must be dismissed under the Act of State doctrine. Plaintiffs identify three acts taken by the Republic that allegedly trigger its duty to make a tender offer under Section 7:  "Argentina has now (1) seized control of YPF's facilities and operations, (2) appointed an intervenor with total control over the Company, and (3) enacted legislation seizing by fiat a majority of the Company's shares."  Cplt. ¶ 3.  All of these acts are essential elements of the Expropriation Process.  All of them took place in Argentina.  Nothing more is required to dismiss the complaint under the Act of State Doctrine.

"The doctrine *precludes any review whatever* of the acts of the government of one sovereign State done within its own territory by the courts of another sovereign State."  *First Nat. City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 763 (1972) (emphasis added); *see also*

---

Securities Exchange Commission, and bidder's acquisition of those shares that are set for sale by the selling shareholders).  Of these procedural steps, several must occur in Argentina.  *See* Sections 7(f)(i) (notification to YPF), 7(f)(ii) (conducting special meeting of Class A shareholders), 7(f)(iii) (mailing by YPF), 7(f)(iv) (publication of notice in Argentina), and 7(f)(vii) (authorization of bid by Argentine Securities Exchange Commission).

[12]   Because there is no subject matter jurisdiction, there is no personal jurisdiction over the Republic. *Verlinden,* 461 U.S. at 485 n.5; *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1992).

- 14 -

*Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 438 (1964) (act of state doctrine "shares with the immunity doctrine a respect for sovereign states").   As the Supreme Court explained: "the courts of one state will not question the validity of public acts (acts *jure imperii*) performed by other sovereigns within their own borders, even when such courts have jurisdiction over a controversy in which one of the litigants has standing to challenge those acts." *Republic of Austria v. Altmann*, 541 U.S. 677, 700 (2004).   "Unlike a claim of sovereign immunity, which merely raises a jurisdictional defense, the act of state doctrine provides foreign states with a substantive defense on the merits." *Id.*[13]

The Act of State doctrine bars this action for two separate reasons.   First, as the Second Circuit held almost thirty years ago, actions relating to "the effect of foreign financial decrees on the investments of United States entities" are barred if those decrees are carried out in a foreign country.  *Braka v. Bancomer, S.N.C.,* 762 F.2d 222, 223-24 (2d Cir. 1985).   In *Braka*, plaintiffs challenged an order of the Mexican government changing the payment terms of certificates of deposit located in Mexico.   The court rejected the argument (made by plaintiffs here) that Mexico was engaging in commercial activity.   Rather, Mexico "acted within its governmental function of setting monetary policy."   762 F.2d at 223-24.   The court also rejected the argument that "the situs of Bancomer's obligation" to pay the plaintiffs was in New York. "The CDs were located in Mexico and were therefore subject to the effects of the exchange control regulations."   762 F.2d at 225.   Because the Mexican decree was "able to come to complete fruition" within the borders of Mexico, the Act of State doctrine barred the complaint.

---

[13]   "Although the act of state doctrine is an affirmative defense as to which a defendant has the burden, a court may properly grant a motion to dismiss on the basis of that doctrine when its applicability is shown on the face of the complaint."  *Konowaloff v. Metro. Museum of Art,* 702 F.3d 140, 146 (2d Cir. 2012).

- 15 -

762 F.2d at 224.[14] "To intervene to contradict the result of the exchange controls would be an impermissible intrusion into the governmental activities of a foreign sovereign." *Id.*

Here, the Republic was obviously carrying out a sovereign function when it undertook the Expropriation Process. The acts underlying the alleged breach of YPF's by-laws are core aspects of the government's decision to ensure an independent supply of oil and gas. *See* Cplt. ¶ 3. The alleged harm to plaintiffs is a direct result of that decision. Because the Complaint is based on "the effect of foreign financial decrees" on the investments of others, it must be dismissed. *Braka*, 762 F.2d at 223. *See also Lyondell-Citgo Ref., LP v. Petroleos de Venezuela, S.A.*, 02 Civ. 0795 (CBM), 2003 WL 21878798 (S.D.N.Y. Aug. 8, 2003) (dismissing complaint where plaintiff's injury was a direct consequence of Venezuela's decision to comply with OPEC policy).

The Act of State doctrine also bars this action for a second reason. The Supreme Court has held that, if the relief demanded by the plaintiff would require the district court "to declare invalid the official act of a foreign sovereign," the complaint must be dismissed. *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp.,* 493 U.S. 400, 405 (1990). This rule bars claims based on acts of expropriation in a foreign country. As Judge Scheindlin put it, "the doctrine bars judicial review of the validity of a taking of property within its own territory by a foreign sovereign government." *Konowaloff v. Metro. Museum of Art*, 10 Civ. 9126, 2011 WL 4430856 (S.D.N.Y. Sept. 22, 2011), *aff'd,* 702 F.3d 140 (2d Cir. 2012) (internal citations omitted). The lawfulness of a foreign government's taking of property "is precisely what the act of state doctrine bars the United States courts from determining." *Konowaloff,* 702 F.3d at 147.

---

[14]   The Second Circuit relied on *Allied Bank Int'l v. Banco Credito Agricola de Cartago*, 757 F.2d 516, 521 (2d Cir. 1985) (finding Act of State doctrine inapplicable to Costa Rican decree that invalidated privately held notes enforceable in U.S. courts and payable by banks in New York).

Plaintiffs seek an order invalidating – in advance – any acquisition of YPF shares that does not include "a tender offer in accordance with the by-laws."  Cplt. at 26-27.  Not satisfied with that relief, they make an even more outrageous demand: they ask the Court to strip the Republic of its right to vote, in Argentina, the shares of an Argentine corporation that are subject to expropriation pursuant to an executive decree and legislation.  *Id.*  In other words, plaintiffs are improperly asking the Court to invalidate an expropriation by the Republic within its own territory (as to which Repsol is simultaneously seeking damages before an international arbitration tribunal, *see supra* at 1) because the expropriation does not include a tender offer.[15] Therefore, the Complaint is barred by the Act of State doctrine.

## POINT III

### THE COMPLAINT SHOULD BE
### DISMISSED BECAUSE OF IMPROPER VENUE

In suits against foreign states, venue is governed by 28 U.S.C. § 1391(f), the venue provision of the FSIA.   The statute provides, in relevant part, that:

> Venue in an action against a foreign sovereign is proper: (1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

28 U.S.C. § 1391(f).  If Repsol is to justify its choice of venue in the Southern District of New York, it must therefore show that "a substantial part of the events or omissions giving rise to the claim occurred" in this District.

---

[15]   "[A]ny censure of another country's acts within its own territory is reserved to diplomatic channels and does not come within the purview of the courts."  *In re Vitamin C Antitrust Litig.*, 584 F. Supp. 2d 546, 550 (E.D.N.Y. 2008).  Whether the Republic ultimately decides to make, or not to make, a tender offer for all remaining Class D shares of YPF, that decision will be a sovereign act directly connected to the Republic's expropriation of YPF.  As the Second Circuit has recently held, any decision *not* to make such a tender offer will be made in Argentina.  "The decision by a foreign sovereign not to perform is itself an act, but it is not an act in the United States; it is an act in the foreign state. . . . " *Rogers,* 673 F.3d at 138 (quoting *Guirlando,* 602 F.3d at 76).

This requirement must be construed strictly.  *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005).  "The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction."  *Olberding v. Illinois Cent. R.R.,* 346 U.S. 338, 340 (1953).  The Second Circuit – construing the identical language of § 1391(b)(2) – has directed the district courts "to take seriously the adjective 'substantial.'"  *Gulf Ins. Co.*, 417 F.3d at 357.  "That means for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere."  *Id. (citing Cottman Transmission Sys. v. Martino,* 36 F.3d 291, 294 (3d Cir. 1994) (emphasis in original).[16]

Applying this test here, it is plain that venue is improper.  There is only one alleged "omission" underlying Repsol's claim:  Argentina's decision not to launch a tender offer as purportedly required by YPF's By-laws.  Cplt. ¶ 40.  As explained above, that decision occurred in Argentina, not in the United States.  *See supra* at 9 (citing *Rogers*, 673 F.3d at 138; *Guirlando*, 602 F.3d at 76).   The other events described in the Complaint – particularly the Expropriation Process and related legislation – also took place in Argentina.  Cplt. ¶¶ 3, 38-39.  There are no "substantial events or omissions" material to Repsol's claim that occurred in this District.  The alleged breach and repudiation of the contract occurred in Argentina.  *Id.* ¶¶ 40-41.  Venue is therefore improper under § 1391(f)(1).

Under these circumstances, the only part of section 1391(f) that provides venue here is (f)(4), which provides that the District of Columbia is the "default venue" for suits against foreign sovereigns.  *Oceanic Exploration Co. v. Conocophillips, Inc.*, 2007 WL 420186 (D.D.C. Feb. 5, 2007).  There is no basis for venue in New York under section 1391(f).

---

[16]    The same analysis applies to both subsections, because they use the same language.  *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,* 241 F.3d 135, 153 (2d Cir. 2001).

Because venue is improper in this district, the action should be dismissed.  *See* Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a).  *See also Spar. Inc. v. Info. Resources, Inc*., 956 F.2d 392, 394 (2d Cir. 1992) (dismissing case because transfer "would reward plaintiffs for their lack of diligence in choosing a proper forum and thus would not be in the interest of justice").  In the alternative – if the Court decides not to dismiss the complaint for any of the other reasons described in this motion – this action should be transferred to the only district where it could have been brought in the first place: the U.S. District Court for the District of Columbia.  28 U.S.C. § 1391(f)(4).  *See Commissions Imp. Exp. S.A. v. Republic of the Congo*, 11 Civ. 6176 (JFK), 2012 WL 1468486 (S.D.N.Y. Apr. 27, 2012) (transferring venue to District of Columbia in an action seeking recognition of an English judgment); *Wye Oak Tech., Inc. v. Republic of Iraq*, 1:09CV793 (AJT/JFA), 2010 WL 2613323 (E.D. Va. June 29, 2010) (transferring venue to District of Columbia where no substantial events occurred in Virginia).

## POINT IV

### THE COMPLAINT SHOULD BE
### DISMISSED UNDER *FORUM NON CONVENIENS*

A simple summary of the facts underlying this action demonstrates that it should be litigated in Argentina:

- The alleged contract is the By-laws of YPF, a company incorporated in Argentina and doing business in Argentina.

- The purported breach took place entirely in Argentina when the Republic began the Expropriation Process without making a tender offer for the remaining Class D shares.

- The National Court of Appraisal will determine the compensation due to owners of the expropriated shares – the same determination that Repsol asks this Court to make here – and Repsol will have an opportunity to contest that determination in Argentina.

- The essential legal issues relating to the alleged breach of contract arise under Argentine law, and the contract itself was created under Argentine law.

- The core documents, including the By-laws, are written in Spanish, and translation could seriously complicate the process of interpreting the key provisions of the By-laws.

- The vast majority of the witnesses and documents are located in Argentina, and may not be available for a trial in New York.

- Argentina's objections to the Hague Convention would likely prevent the parties from taking depositions and obtaining evidence there.

- Finally, the public interest of Argentina in the expropriation of YPF shares and the management of the country's oil and gas resources far outweighs any interest of the United States in this matter.

Under these circumstances, the Court should dismiss the complaint on *forum non conveniens* grounds. This determination requires a familiar three-part analysis focused on (i) the degree of deference to be afforded plaintiff's choice of forum, (ii) the adequacy of defendant's alternative forum, and (iii) the balance of private and public factors. *Frederiksson v. HR Textron, Inc.*, 484 F. App'x 610, 612 (2d Cir. 2012); *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003); *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001) (*en banc*). This analysis tilts strongly in favor of trial in Argentina.

The district court is not required to determine its own subject matter jurisdiction before ruling on a *forum non conveniens* motion. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435 (2007). Where the relevant factors point so strongly toward dismissing the action in favor of a more convenient foreign forum, this Court is free to dismiss the complaint without reaching the question of Argentina's immunity under the FSIA. "This is a textbook case for immediate *forum non conveniens* dismissal." *Id.*

**A.   Plaintiffs' Choice of Forum is Entitled To Little Deference**

Plaintiffs' decision to file suit in the United States is not dispositive. *Iragorri*, 274 F.3d at 65, 74. Because it is a Spanish corporation, Repsol's choice of forum "deserves less deference." *Piper Aircraft Co v. Reyno*, 454 U.S. 235, 255-56 (1981); *Alfadda v. Fenn*, 159 F.3d 41, 46 (2d Cir. 1998). Repsol is a multinational company with business activities around the globe. Repsol has a continuing interest in YPF, and appoints two representatives to YPF's board

of directors.  *See supra* at 5 n.7.   It is already engaged in a constitutional challenge to the

Expropriation Process that is pending in Argentina.  *See supra* at 2; Pistarini Dec. ¶¶ 3-4, Exhs.

A, B.   Repsol will not be inconvenienced by a lawsuit in Argentina.  *See Sinochem,* 549 U.S. at

430 (no reason to assume that chosen forum is appropriate when it is not plaintiff's home forum).

      The other plaintiff, Texas Yale Capital, is a corporation doing business in Texas.

As explained below, the company sold its shares in YPF in 2012.  *See infra*, Point V.C.   It also

has no apparent connection to the Southern District of New York, so there is no basis to conclude

that this forum is particularly convenient.  *See Frederikson*, 484 F. App'x at 612 ("convenience

of the plaintiff's residence in relation to the chosen forum" is relevant factor).   The burden is on

Texas Yale Capital to make this showing:

> The connections to the United States alleged by plaintiffs, however, are
> insubstantial in light of the fact that the vast majority of the activities alleged in
> the complaint were committed by foreign nationals on foreign soil.  Plaintiffs thus
> fail to allege a *bona fide* connection that justifies granting substantial deference to
> their choice of forum.

*Acosta v. JPMorgan Chase & Co.*, 219 F. App'x 83, 86 (2d Cir. 2007).  "[D]ismissal will

ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on

the defendant or the court, and where *the plaintiff is unable to offer any specific reasons of

convenience supporting his choice*."  *Piper Aircraft*, 454 U.S. at 249 (emphasis added).  To avoid

dismissal, Texas Yale Capital must demonstrate why this District is the most convenient forum.

**B.   Argentina Is An Adequate Alternative Forum**

      The requirement of an adequate alternative forum is satisfied where (i) a

defendant is amenable to service in that forum, and (ii) the forum permits litigation of the subject

matter of the dispute.  *Pollux Holding Ltd.*, 329 F.3d at 75; *Lust v. Nederlandse Programma

Stichting*, 11-2972-CV, 2012 WL 5233617 (2d Cir. Oct. 24, 2012).  In determining whether there

is an adequate alternative forum available, it does not matter that a foreign court may apply

substantive law less favorable to the plaintiff, unless the remedy provided "is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft,* 454 U.S. at 254.  Federal courts in the U.S. have repeatedly held that Argentina is an adequate alternative forum in connection with motions for *forum non conveniens* dismissal.[17]

Further, as Professor Arecha states in his declaration, the Republic is amenable to suit in the Federal Courts of Argentina, and judgments of those courts against the national government are fully enforceable.  *See* Arecha Dec. ¶¶ 26-28.  Further, those courts have jurisdiction over disputes among shareholders concerning an Argentine company like YPF.  *Id.*, ¶ 30.  Indeed, Repsol is already litigating the constitutionality of the Expropriation Process against the Republic in Federal Court in Buenos Aires.  *See supra* at 20-21; Pistarini Dec. ¶ 3 and Exh. A thereto.  Therefore, Argentina is an adequate alternative forum for this action.

## C.  The Balance of Private and Public Interest Factors Favors Dismissal

Where an adequate alternative forum exists, the *forum non conveniens* analysis requires a balancing of private and public factors.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Iragorri*, 274 F.3d at 73-74.  These factors strongly favor litigating this lawsuit in Argentina.

### 1.     The Private Interest Factors Favor Litigation in Argentina

The private factors bearing on dismissal under *forum non conveniens* include the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses.  *Gulf Oil,* 330

---

[17]   *See, e.g., Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283-84 (11th Cir. 2001) (finding adequate remedies available in Argentina); *Warter v. Boston Securities, S.A.*, 380 F.Supp.2d 1299, 1311 (S.D. Fla. 2004) (noting that numerous U.S. courts have found Argentina an adequate forum); *MasterCard Int'l v. Argencard Sociedad Anonima*, No. 01 Civ. 2027 (JGK), 2002 WL 432379, *7 (S.D.N.Y. Mar. 20, 2002) (finding Argentina adequate forum but denying motion on other grounds); *Aguas Lenders Recovery Grp., LLC v. Suez S.A.*, 06 Civ. 7873 (RLC), 2008 WL 612669 (S.D.N.Y. Mar. 3, 2008), *rev'd on other grounds sub nom. Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696 (2d Cir. 2009) (Argentina meets both parts of adequacy test).

U.S. at 508; *Iragorri*, 274 F.3d at 73-74.  Here, the alleged decision not to launch a tender offer

for the outstanding YPF shares occurred in Argentina.  The witnesses familiar with that decision

and the documents relating to it are located there.  YPF is based in Buenos Aires, and most of the

company officials familiar with the adoption and revisions of the by-laws over the past 20 years

reside there.  Any former officers of YPF and the Republic who could testify in this action are

likely to be residents of Argentina.  The cost and inconvenience of bringing witnesses to New

York from Argentina and then translating their testimony into English would be significant – and

wholly unnecessary if the case were heard in Argentina.

> We find nothing unreasonable in the district court's conclusion, based on
> defendants' evidence, that "nearly all of the relevant non-party witnesses" are in
> Argentina and Uruguay, and that the inconvenience of transporting witnesses and
> translating documents from Spanish to English weighed in favor of dismissal.

*Acosta*, 219 F. App'x at 87; *Postol v. El-Al Israel Airlines, Ltd.*, 690 F. Supp. 1361, 1364

(S.D.N.Y. 1988) (noting disruption and "expense of bringing over and accommodating willing

witnesses" from Europe).

Moreover, obtaining deposition testimony in Argentina (either as pre-trial

discovery or as a means of preserving trial testimony) is problematic.  While Argentina is a

signatory to the Hague Convention, Argentina's reservations to the Convention exclude those

provisions that authorize the taking of evidence by letters rogatory.[18]  In light of such

reservations, depositions would be "difficult or impossible to obtain," because it is "reasonable

to suppose that an unwilling witness would challenge any effort to take the witness' testimony."

*First Union Nat'l Bank v. Paribas*, 135 F. Supp.2d 443, 450 (S.D.N.Y. 2001), *aff'd sub nom.*

*FUNB v. Arab African Int'l Bank*, 48 Fed. App'x 801 (2d Cir. 2002) (analyzing and applying

England's reservations to Hague Convention).  The Court's inability to compel the testimony of

---

[18]   *See* Declarations/Reservations to Argentina's accession to the Convention, *available at*
http://www.hcch.net/index_en.php?act=status.comment&csid=484&disp=resdn.

unwilling witnesses in Argentina, as compared with the Argentine courts' power over such witnesses on Argentine soil, strongly supports dismissal. *See id.* at 454. In short, all of the private factors suggest that this action belongs in Argentina.

### 2.    The Public Interest Factors Favor Litigation in Argentina

The public factors bearing on dismissal under *forum non conveniens* include the foreign nation's interest in resolving the controversy and the general policy that each nation's courts should apply its own law. *Gulf Oil,* 330 U.S. at 508-09; *Iragorri*, 274 F.3d at 73-74. Each of these factors weighs in favor of litigating this lawsuit in Argentina rather than New York.

This action implicates Argentina's sovereign responsibility for the country's energy resources and its national interest in the proper application of its expropriation laws. *Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384, 392 (2d Cir. 2011) (litigation relating to a foreign nation's "sovereign prerogative" is properly dismissed in favor of that nation's courts); *Piper Aircraft,* 454 U.S. at 260 (noting local interest where incident occurred). Plainly, Argentina has a very strong interest in determining these issues.

Moreover, because this action concerns the interpretation of By-laws adopted by YPF (an Argentine company), the key legal issues are governed by Argentine law. *See* Arecha Dec. ¶ 30; *First Union Nat'l Bank*, 135 F. Supp.2d at 454 (dismissing on *forum non conveniens* grounds where "this Court would be obliged to apply English law to at least part of the dispute"). Especially given New York's insubstantial relationship to the YPF controversy, there is no reason to burden the Court with these foreign legal issues.

Judicial economy supports dismissal for another reason: Argentine law requires a proceeding in the National Court of Appraisal to determine the compensation due to owners of the expropriated shares – the same determination that plaintiffs ask this Court to make here. *See* Arecha Dec. ¶ 15. The Complaint asks the Court to decide how compensation for the remaining

Class D shares should be determined, and to award compensation to the owners of those shares. Cplt. at 26, subd. A.  This relief depends on an answer to the same question that will be decided by the National Court of Appraisal: how much are the Class D shares worth?  It makes no sense for the Court to undertake this fact-intensive economic analysis when the same determination will be made in a much more convenient and appropriate forum.  *Sinochem,* 549 U.S. at 435-36 (issue being litigated in China is "best left for determination by the Chinese courts").

Accordingly, the Complaint should be dismissed under the doctrine of *forum non conveniens*.

## POINT V

### THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Even if this Court had subject matter jurisdiction over this lawsuit, which it does not, and declines to dismiss the Complaint under the Act of State doctrine, for improper venue, or *forum non conveniens*, the Complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679.  To satisfy this legal standard, the complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ."  *Twombly*, 550 U.S. at 555.  Accordingly, once the complaint's legal conclusions and labels are stripped away, the court must determine whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

## A.   The Complaint Fails to State
##      A Claim for Breach of Contract

The Complaint's claim for breach of contract, *see* Cplt. ¶¶ 51-56, fails to allege that the Republic has breached the purported tender offer obligation arising under the By-laws. Even assuming *arguendo* that the tender-offer obligation applies to shares acquired through expropriation of shares, this obligation plainly applies only to an entity that has "acquired" the YPF shares at issue.  This limitation is made clear by Sections 7 and 28 of the By-Laws:

- ▪  Section 7(d) makes it prohibited "to acquire" shares of YPF without complying with the tender offer requirements of subsections (e) and (f) "if as a result of such acquisition" the purchaser becomes holder of or exercises control of shares in a specified amount.

- ▪  Section 28(A) provides that the tender offer requirements "shall apply to all acquisitions" if, "as a consequence of such acquisition," the Republic becomes owner or exercises control of the requisite amount of shares or acquires a certain amount of shares.

Sections 7(d) and 28(A) thus make clear that the linchpin of the obligation to make a tender offer is the "acquisition" of YPF shares.  But the Republic has not yet *acquired* any YPF shares. While the Republic may have commenced the Expropriation Process – through the temporary occupation of 51% of Repsol's Class D shares and enactment of the Hydrocarbons Sovereignty Law – title to the shares will not pass to the Republic until compensation is determined by the National Court of Appraisal and paid to Repsol.  *See supra* at 4; Hydrocarbons Sovereignty Law, arts. 9, 12; Arecha Dec. ¶¶ 5-21.  The Complaint itself acknowledges there has been no acquisition yet, but rather the mere expression of "an intention to acquire" shares.  *See* Cplt. ¶¶ 3, 61.

Because there has been no "acquisition," the alleged tender offer obligation arising under the By-laws has not been triggered, and therefore no breach of that obligation has occurred.  The breach of contract claim should therefore be dismissed.  *Verosol USA, Inc. v. Florida Shades, Inc.*, 91 Civ. 6263 (VLB), 1992 WL 696643 (S.D.N.Y. Sept. 17, 1992)

(dismissing claim for attorneys' fees allegedly due under contract because triggering event had not occurred).

**B.     The Remaining Claims Should Be Dismissed**

The Complaint's claims for anticipatory repudiation and declaratory judgment both depend on the allegation that the Republic breached an enforceable contractual obligation, created by the By-laws, to make a tender offer for all outstanding Class D shares of YPF.  *See* Cplt. ¶¶ 58-59 (anticipatory repudiation claim); *id*. ¶ 69 (declaratory judgment claim).  As demonstrated above, however, the alleged tender offer obligation has not been triggered because there has been no acquisition of shares.  Acquisition will not happen until the Expropriation Process is completed.  *See supra* Point V.A.

The promissory estoppel claim, Cplt. ¶¶ 62-65, fails for similar reasons.  The Complaint alleges that by means of the By-laws and the prospectus issued in connection with the 1993 public offering, the Republic promised "to U.S. and other investors that it would not retake control of YPF without making a tender offer to all Class D shareholders as provided in the [B]y-laws."  Cplt. ¶ 63.  This claim, however, fails to identify any statements made in the prospectus that were not also made in the By-laws.   *See* Cplt. ¶¶ 22-23; *see also id*. ¶ 23 (quoting prospectus provision characterizing what is required "[u]nder the Company's By-Laws").  Accordingly, this claim, like plaintiffs' claim for breach of contract, depends entirely on the allegation that the By-laws require the Republic to launch a tender offer as a consequence of commencing the Expropriation Process over YPF shares.  Because this allegation cannot be sustained, *see* Point V.A., *supra,* the promissory estoppel claim cannot be sustained, either.

Finally, plaintiffs claim that the Republic has breached a duty of good faith and fair dealing implied in the By-laws, Cplt. ¶¶ 71-75, which allegedly "constitute an enforceable contract," *id*. ¶ 72.  This claim is thus duplicative of the breach of contract claim and should be

dismissed.  *Harris v. Provident Life & Accident Ins. Co.,* 310 F.3d 73, 80 (2d Cir.2002) ("parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract"); *Vill. On Canon v. Bankers Trust Co.,* 920 F. Supp. 520, 534 (S.D.N.Y. 1996) ("[t]he implied covenant . . . does not create any new contractual rights, nor does it provide an independent basis for recovery) (citations omitted).

## C.    Texas Yale Capital's Claims Should Be Dismissed

While the Complaint alleges that Texas Yale Capital is a current shareholder of YPF Class D shares, Cplt. ¶ 6, this allegation is untrue.  According to the most recent disclosure made by Texas Yale to the SEC, dated February 8, 2013, YPF is not among the companies in which Texas Yale Capital is currently invested.  *See* Scarvalone Dec., Exh. H.  Because the By-laws' alleged tender offer obligation is triggered only by an acquisition of YPF shares, which has not yet occurred, *see* Point V.A., *supra*, a shareholder (like Texas Yale Capital) that sells its Class D shares in advance of the Republic's acquisition has no cognizable claim for breach of the alleged tender offer obligation.  Texas Yale Capital must therefore be dismissed from this lawsuit.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Complaint should be dismissed in its entirety.

Dated:  New York, New York
        April 30, 2013

                              Respectfully submitted,

                              DOAR RIECK KALEY & MACK

                    By:       /s/ Edward Scarvalone
                              EDWARD SCARVALONE
                              217 Broadway, 7th Floor
                              New York, New York 10007
                              Tel.:  (212) 619-3730
                              Fax:  (212) 962-5037
                              Email: escarvalone@doarlaw.com


                              JONATHAN A. WILLENS LLC

                    By:       /s/ Jonathan A. Willens
                              JONATHAN A. WILLENS
                              217 Broadway, 7th Floor
                              New York, New York 10007
                              Tel.:  (212) 637-3749
                              Email: jawillens@briefworks.com


                              *Attorneys for Defendant*
                              *The Republic of Argentina*