UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| REPSOL YPF, S.A. and TEXAS YALE CAPITAL CORP., Individually and On Behalf of All Others Similarly Situated, | : |
| | : |
| Plaintiffs, | :     12 Civ. 3877 (TPG) |
| - against - | : |
| THE REPUBLIC OF ARGENTINA, | : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF CARLOS GUSTAVO PISTARINI
IN SUPPORT OF THE ARGENTINE REPUBLIC'S
<u>MOTION TO DISMISS THE COMPLAINT</u>**

Pursuant to 28 U.S.C. § 1746, I, Carlos Gustavo Pistarini hereby state the following:

1.  I am an attorney licensed under the laws of Argentina and head of the Litigation Department of the Ministry of the Economy and Public Finance (the "Ministry") of the Argentine Republic ("Republic"). I submit this affidavit in response to paragraphs 10-16 of the opinion submitted by Dr. Gustavo Naveira, relating to the lawsuits pending against the National State of Argentina and against YPF S.A. ("YPF"), derived from the temporary occupation by the Republic and the YPF stock expropriation process, including complaints filed by Repsol S.A., formerly known as Repsol YPF S.A., and its corporate affiliates ("Repsol").

2.  My previous declaration, dated April 29, 2013, lists (in Exhibits A and B to the declaration) the above-mentioned lawsuits against the National State and against YPF. Based on my knowledge of those lawsuits, including knowledge gained in my capacity as Director of

Litigation, many of those lawsuits have had substantial procedural advancement to date. I am unaware of any unusual procedural delay.

    3.    In this respect, I observe as follows:

        (a)    case no. 2 of Exhibit A -- entitled "REPSOL YPF S.A. C/EN –DTO. 530, 532 AND 732/12 ON COGNIZANCE PROCEEDINGS" (CASE RECORD N° 21941/12) -- was filed by Repsol on June 1, 2012. From that date, within forty-one days[1] a court decision was entered regarding the preliminary relief measure sought by Repsol, and, after only ten months, issue was joined.[2]

        (b)    case no. 4 of Exhibit A -- entitled "REPSOL BUTANO S.A. C/ EN-PEN-LEY 26741-DTO. 530,557 AND 732/12 ON COGNIZANCE PROCEEDINGS" (Case Record N° 27075/2012) -- was filed by Repsol on July 12, 2012. From that date, within less than five months[3] a decision was entered regarding the preliminary relief measure sought by Repsol, and eight months later, issue was joined.[4]

        (c)    case no. 5 of Exhibit A -- entitled "ASOCIACIÓN ESPAÑOLA DE ACCIONISTAS MINORITARIOS DE EMPRESAS COTIZADAS Y OTROS C/E.N.A. S/DAÑOS Y PERJUICIOS" (Case Record No. 59.266/12) -- in which Repsol was joined as a third party, was filed on December 20, 2012 and the time to answer the complaint (which cannot be extended) concludes on September 13, 2013, *i.e.*, only nine months after the action was initially brought.

    4.    Thus, contrary to Dr. Naveira's statement in paragraph 7 of his affidavit, the Argentine courts in each of the three cases listed above determined their jurisdiction to hear the lawsuit, and the National Government has answered the complaint, in less than one year from filing.

---

[1] The first decision was entered on June 7, 2012 and the second decision was entered on July 12, 2012.

[2] The National Government answered the complaint on April 8, 2013.

[3] The first decision was entered on September 12, 2012 and the second decision entered on December 4, 2012.

[4] The National Government answered the complaint on August 21, 2013.

5. Regarding Dr. Naveira's statement in paragraph 11 of his affidavit, related to alleged delay incurred in the determination of jurisdiction in different lawsuits, the jurisdictional analysis must always be carried out – and before commencing any further process – by the Judge whenever it relates to his jurisdictional power.

6. The rules related to jurisdiction are expressly -- and specifically -- set forth in the Argentine Federal Code of Civil and Commercial Procedure, and the Judge must not deviate from them.[5] These rules provide that if based on a reading of the facts, the Judge considers that he does not have jurisdiction to hear the case, "such Judge shall inhibit himself from handling the case."[6]

7. Additionally, it is evident that claims raised by Repsol against YPF, which were filed in the National Commercial Court, include both corporate issues (which are within the jurisdiction of judges in the Commercial Court) and specific matters of the administrative and expropriation process (which are outside the jurisdiction of judges in that Court).  Since Repsol (as described below) frequently has introduced several issues in the same course of action, it should not be surprising that different Judges in the Commercial Court may have interpreted the jurisdictional rules differently.

---

[5] Federal Code of Civil and Commercial Procedure, BOOK ONE – GENERAL PROVISIONS, Title I "Judicial Body" [Órgano Judicial], Chapter I "Competence" [also "Jurisdiction"] [Competencia] (Sections 1 to 6) , Chapter II "Competence Issues" [Cuestiones de competencia] (Sections 7 to 13).

[6] National Code of Civil and Commercial Procedure, Section 4.

8. On a related note, in the case of minority shareholders, "De San Martín José y Otro c/ EN – PEN on Cognizance Proceedings" (Case Record No. 4201/2012), listed as case no.1 in Exhibit A to my earlier declaration, the shareholders' sole claim involves obtaining an adverse judgment against the National Government compelling it to make a public tender offer pursuant to the YPF Bylaws. The subject of this lawsuit (the Bylaws) is the same as the suit brought by plaintiffs in the lawsuit herein. Such a claim is commonly brought before a Commercial Court; however, this lawsuit was brought before the National Civil and Commercial Court. The reasons that led plaintiffs to select such Court are unknown.[7]

9. Therefore, the cases brought by Repsol and the YPF minority shareholders have been filed in three different courts (Commercial, National Contentious Administrative, and National Civil and Commercial), interpreting in a different manner which Court should actually have jurisdiction.

10. Much of the delay described by Dr. Naveira results from Repsol's procedural strategy, as I explain below.

11. When addressing a request for preliminary relief, Argentine courts offer a decision related to an urgent issue that does not require a detailed legal analysis. By contrast, when addressing the legal merits, courts deal with all issues raised in the complaint, and the answers. In the above-mentioned cases against the Republic, for example, the courts must decide the constitutional validity or invalidity of Sections 13 and 14 of Law No. 26,741.

---

[7] The National Government has not taken part in this case yet because only a previous notice set forth in Section 8 of Law No. 25,344 has been received.

12.     However, nothing prevents the court from simultaneously addressing a request for preliminary relief and the underlying claim in the complaint (*e.g.*, the constitutional validity of Sections 13 and 14 of Act No. 26,741).

13.     In the cases discussed in paragraph 3 above (regarding case nos. 2 and 4 of Exhibit A), Repsol chose to bring its request for preliminary relief first, without filing its underlying complaint.  Repsol filed its underlying complaint only after its earlier request for preliminary relief had been decided by the court.  This was a strategic decision on Repsol's part; as noted above, Argentine procedure permits Repsol to proceed simultaneously with its request for preliminary relief and advancing its underlying claim in the complaint.  Logically, Repsol's decision to wait until after its earlier request for preliminary relief had been decided by the court before filing its complaint caused delay in the advancement of the case.

14.     In relation to the statements made by Dr. Naveira in paragraph 12 of his affidavit, concerning courts deciding jurisdictional issues without ruling on the validity of Law No. 26,741 and Executive Orders 530/12, 532/12, 557/12 and 732/12, such constitutionality issues may not be analyzed in an initial stage of process when treating jurisdictional matters or preliminary relief measures decided *ex parte*.  If the Judge issued a decision related thereto during that initial stage, it would imply an anticipation of the final decision of the trial without having heard the National Government's position.

15. The fact that Dr. Naveira does not agree on particular jurisdictional decisions made by his previous colleagues in the Argentine Judicial Branch does not mean that he is right and the others are wrong.

16. Regarding Exhibit B attached to my previous statement (listing the various lawsuits brought against YPF), while these actions fall outside my authority as Director of Litigation for the Ministry, I have been informed that the actions are in full process, and that the issue in each lawsuit has been joined.[8]

17. Based on the above, it appears that Repsol's strategy in its multiple lawsuits filed in Argentina involves activating the main process on the underlying complaint only after preliminary relief matters have been concluded. This has caused delay. By contrast, except for some isolated cases, no delays or deferrals have been observed in the defense of Repsol's lawsuits, whether by judicial activity or by the Argentine National Government.

18. The "mistakes and questionable procedural steps" cited by Dr. Naveira in paragraph 14 of his affidavit should be considered as simple mistakes that may happen – and in fact, do happen – in any Court of Justice, for example, sending a file to a wrong office or person. Such mistakes happen without there being any bad intention on anyone's part.

---

[8] REPSOL S.A. C/YPF S.A. S/ Ordinario (Nullity of Assembly, 06/04/12), REPSOL S.A. C/YPF S.A. S/Ordinario (Nullity of Meeting, 07/17/12), REPSOL S.A. C/YPF S.A. S/Ordinario (Nullity of Assembly, 09/13/12) and REPSOL BUTANO S.A. C/YPF GAS S.A. S/Ordinario (Nullity of Assembly, 06/06/12), under proceedings before the National Commercial Court of First Instance N° 3, Clerk of Court N° 6.

19. Finally, while Repsol's lawsuits against YPF do not fall within my authority, based upon my review of the cases it appears that Repsol is relying upon the absence of a public tender offer under the YPF Bylaws to challenge the different YPF shareholder meeting decisions adopted by the newly-composed YPF board.

20. Specifically, in the case "Repsol S.A. c/YPF S.A. on Nullity of Assembly" (Case Record No. 103,144 – No. 19789/2012), under proceedings before the National Commercial Court No. 3, Clerk of Court No. 6 (case no. 2 on Exhibit B to my earlier declaration), Repsol bases its claim on the legal contention that there has been "non-compliance of the National Government with its obligation to launch the public tender offer" for YPF shares, which tender offer is allegedly required under Sections 7 and 28 of the Bylaws. Repsol used the same line of argument in the case "Repsol S.A. c/YPF S.A. s/ ordinario" (Case Record No. 26,307/2012) and in "Repsol S.A. c/YPF S.A. s/ ordinario" (Case Record No. 103,553), which correspond to case nos. 4 and 5, respectively, of my previous declaration's Exhibit B.

I state under penalty of perjury under the laws of the United States of America that the foregoing information is true and correct to the best of my knowledge.

Made in Buenos Aires, August <u>28</u> , 2013.

/ signed /
Carlos Gustavo Pistarini

[stamp:]  Dr. CARLOS GUSTAVO PISTARINI
Director of Legal Operations and Control



**Global Language Services**
Translations · Interpreting
DTP · Localization

KERN Corporation
The Helmsley Building
230 Park Avenue, Suite 1517
New York, NY 10169

Tel. (212) 953 2070
Fax (212) 953 2073
kern.ny@e-kern.com

www.e-kern.com

State of: __New York__

County of: __New York__

ss.:

# CERTIFICATE OF ACCURACY

*IT IS HEREBY CERTIFIED*, that KERN Corporation, a corporation organized and existing under the laws of the State of New York, is professionally engaged in the rendering of foreign language translation services; that it has translated the following document(s)

**DECLARATION OF CARLOS GUSTAVO PISTARINI IN SUPPORT OF THE ARGENTINE REPUBLIC'S MOTION TO DISMISS THE COMPLAINT**

from the **SPANISH** language into the **ENGLISH** language and that the said translation is a true and correct rendering of the said document to the best of our knowledge and belief.

Signed by: _____
(Eric Schloss)
for

Sworn to before me this 29 Day of August, 2013.

_____
Notary Public

JOY WILTERMUTH
NOTARY PUBLIC, State of New York
No. 01WI - 6093589
Qualified in New York County
My Commission Expires June 20, 2015

TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
DISTRITO SUR DE NUEVA YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REPSOL YPF, S.A., y TEXAS YALE          :
CAPITAL CORP., a título personal y en representación de
otras partes en situación similar,      :

              Demandantes,     :    12 Civ. 3877 (TPG)

  contra                                  :

REPÚBLICA ARGENTINA                     :

              Demandada.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DECLARACIÓN DE CARLOS GUSTAVO PISTARINI
### PRESENTADA EN APOYO AL
### PEDIDO PARA RECHAZAR LA DEMANDA
### DE LA REPÚBLICA ARGENTINA

De conformidad con el artículo 28 del U.S.C. § 1746 quien suscribe, Carlos Gustavo Pistarini, declaro lo siguiente:

1. Soy un abogado habilitado para ejercer la profesión bajo la ley en Argentina y me desempeño como Director del Departamento de Gestión y Control Judicial del Ministerio de Economía y Finanzas Públicas (el "Ministerio") de la República Argentina (la "República). Presto declaración en réplica a los párrafos 10 a 16 de la opinión presentada por el Dr. Gustavo Naveira, relacionada con las acciones legales pendientes contra el Estado Nacional de Argentina e YPF S.A. ("YPF"), derivada de la ocupación temporánea por parte de la República y del proceso de expropiación de las acciones de YPF, incluyendo demandas presentadas por Repsol S.A., antes conocida como Repsol YPF S.A., y sus afiliados corporativos ("Repsol").

2. Mi anterior declaración, de fecha 29 de abril de 2013, enumera (en los Anexos A y B de la declaración) las causas allí detalladas contra el Estado Nacional e YPF. En virtud de mis conocimientos sobre dichas acciones judiciales, incluso el conocimiento obtenido en mi

carácter de Director del Departamento de Control y Gestión Judicial, puedo afirmar que muchas de esas causas han tenido importantes avances procesales a la actualidad. Desconozco que se haya producido una demora procesal inusual.

3. En tal sentido, puede observarse que:

(a) la causa N° 2 del Anexo A – "REPSOL YPF S.A. C/EN –DTO. 530, 532 AND 732/12 SOBRE PROCESO DE CONOCIMIENTO" (EXPTE. N° 21.941/12) – fue presentada por Repsol el 1° de junio de 2012. A partir de esa fecha, en el término de cuarenta y un días[1] obtiene resolución judicial firme a su pretensión cautelar y, habiendo transcurrido sólo diez meses, quedó trabada la litis.[2]

(b) la causa N° 4 del Anexo A – "REPSOL BUTANO S.A. C/EN –PEN-LEY 26.741-DTO. 530, 557 Y 732/12 SOBRE PROCESO DE CONOCIMIENTO" (Expte. N° 27.075/2012) – fue presentada por Repsol el 12 de julio de 2012. A partir de esa fecha, en menos de cinco meses[3] obtiene resolución judicial firme a su pretensión cautelar y ocho meses después quedó trabada la litis.[4]

(c) la causa N° 5 del Anexo A - "ASOCIACIÓN ESPAÑOLA DE ACCIONISTAS MINORITARIOS DE EMPRESAS COTIZADAS Y OTROS C/E.N.A. S/DAÑOS Y PERJUICIOS" (Expte. N° 59.266/12), en la cual Repsol está citado como tercero, fue presentada en fecha 20 de diciembre de 2012 y el plazo para contestar la demanda, que es inexorable, opera el 13 de septiembre de 2013, o sea a tan solo nueve meses de iniciada la acción.

4. Contrariamente a lo afirmado por el Dr. Naveira en el párrafo 7 de su declaración jurada, los tribunales argentinos en cada una de las tres causas enumeradas con anterioridad determinaron su competencia, y el Gobierno Nacional contestó la demanda, en menos de un año desde su presentación.

---

[1] Sentencia de primera instancia 07 de junio de 2012 y sentencia de segunda instancia 12 de julio de 2012.

[2] El Estado Nacional contestó la demanda con fecha 08 de abril de 2013.

[3] Sentencia de primera instancia 12 de septiembre de 2012 y sentencia de segunda instancia 4 de diciembre de 2012.

[4] El Estado Nacional contestó la demanda con fecha 21 de agosto de 2013.

5. Respecto de lo manifestado por el Dr. Naveira en el párrafo 11 de su declaración jurada, en cuanto a las supuestas demoras incurridas en la determinación de la competencia en diferentes acciones, no puede obviarse que el examen de la competencia debe ser realizado inexcusable –y previo a todo trámite- por el Juez interviniente, toda vez que de allí emana su poder jurisdiccional.

6. Las normas sobre competencia se encuentran expresa -y taxativamente- establecidas en el Código Procesal Civil y Comercial de la Nación y el juez no puede apartarse de ellas.[5] Conforme a dicho Código, el juez tiene el deber de inhibirse de oficio si de la lectura de la exposición de los hechos advierte que los mismos están fuera de su competencia."[6]

7. Por otra parte, es indudable que las pretensiones planteadas por Repsol contra YPF, las cuales fueron presentadas ante la justicia Comercial, contienen temas societarios (propios de la competencia de los jueces comerciales) y temas específicos del proceso expropiatorio y administrativo (que exceden la competencia de los jueces comerciales). Dado que Repsol (según se describe a continuación) ha introducido frecuentemente diversos temas en la misma acción, es razonable esperar diferentes interpretaciones por parte de los jueces de la justicia comercial respecto de las reglas relacionadas con la competencia.

8. En el caso de accionistas minoritarios "De San Martín José y Otro c/ EN – PEN s/ Proceso de Conocimiento (Expte. N° 4201/2012), que figura como causa N° 1 del Anexo "A" de mi anterior declaración, se observa que la única pretensión de los accionistas consiste

---

[5] Código de Procedimiento en lo Civil y Comercial de la Nación, LIBRO PRIMERO - DISPOSICIONES GENERALES, Título I "Órgano Judicial", Capítulo I "Competencia" (artículos 1 a 6), Capítulo II "Cuestiones de competencia" (artículos 7 a 13).

[6] Código de Procedimiento en lo Civil y Comercial de la Nación, artículo 4°.

en que se condene al Estado Nacional a realizar la OPA establecida por el Estatuto de YPF. El objeto de dicho litigio (los Estatutos) es el mismo que el reclamado por los demandantes en la presente demanda. Usualmente se iniciaría ante el tribunal en lo comercial y, sin embargo, el juicio es iniciado ante la justicia Civil y Comercial Federal de la República Argentina. Se desconocen los motivos que llevaron a los demandantes a optar por tal fuero.[7]

9. De lo expuesto, se desprende que tenemos a la vista que diferentes actores tales como la propia Repsol y accionistas minoritarios de YPF han entablado litigios ante distintos fueros judiciales (comercial, contencioso administrativo federal, civil y comercial federal), interpretando de distinta forma cuál es el competente realmente.

10. Una gran parte de los retrasos descriptos por el Dr. Naveira derivan de la estrategia procesal de Repsol, tal como explico a continuación.

11. Al tratar la petición de una medida cautelar los tribunales argentinos se expiden sobre una cuestión urgente que no requiere un exhaustivo análisis. Por el contrario, al estudiar la cuestión de fondo los tribunales tratan la totalidad de las pretensiones articuladas y respondidas en la demanda. En los casos mencionados contra la República, por ejemplo, los tribunales deberán pronunciarse acerca de la validez –o invalidez- constitucional de los artículos 13 y 14 de la ley 26.741.

12. La petición de una medida cautelar y la petición de fondo (en este caso el cuestionamiento de la validez constitucional de los artículos 13 y 14 de la ley 26.741) pueden tramitar simultáneamente.

---

[7] De este pleito solo se ha recibido la comunicación previa establecida en el artículo 8 de la Ley 25.344, por lo que el Estado Nacional no ha tenido participación alguna hasta el presente en este caso.

13. En los casos que se mencionan en el párrafo 3 del presente (respecto de las causas N° 2 y 4 del Anexo A), se observa que Repsol optó por darle impulso primero a su pretensión cautelar y sin dar trámite a su pretensión de fondo. Repsol impulsó su pretensión de fondo después de obtener una decisión sobre la medida cautelar; tratándose, seguramente, de una decisión de estrategia judicial tomada por parte de Repsol. Como se describe anteriormente, el proceso judicial en la República Argentina permite a Repsol proceder simultáneamente con su solicitud de medida cautelar y avanzar en la pretensión de fondo contemplada en la demanda. Lógicamente, la decisión de Repsol de esperar hasta obtener la decisión del tribunal sobre la medida cautelar para luego dar impulso a la pretensión de fondo causó demoras en el avance del juicio.

14. En relación a lo afirmado por el Dr. Naveira, en el párrafo 12 de su declaración jurada, sobre los tribunales que decidieron temas de competencia sin pronunciarse sobre la validez de la Ley 26.741 y de los Decretos 530/12, 532/12, 557/12 y 732/12; dicha cuestión de constitucionalidad no puede ser analizada en una etapa inicial del proceso al tratar cuestiones de competencia o de medidas cautelares que se deciden inaudita parte. En tal caso, de pronunciarse el juez sobre ello en esa etapa inicial podría implicar un anticipo de la decisión final del juicio sin haber oído al Estado Nacional.

15. El hecho de que el Dr. Naveira no esté de acuerdo con decisiones particulares relacionadas con la competencia de sus anteriores colegas del poder judicial de Argentina no significa que es él quien tiene razón y los demás están equivocados.

16. Respecto del Anexo B acompañado en mi declaración anterior (donde se enumeran los diversos litigios presentados contra YPF), si bien no son causas que están bajo

- 5 -

mi competencia como Director del Departamento de Control y Gestión Judicial del Ministerio, he tomado conocimiento que las acciones allí consignadas se encuentran en pleno trámite, habiéndose trabado la litis.[8]

17.  De lo detallado precedentemente, se puede observar que la estrategia procesal de Repsol en sus múltiples juicios iniciados en la jurisdicción argentina consiste en activar los procesos principales luego de concluidas las pretensiones cautelares; por lo que se reitera, que dicha estrategia indudablemente ocasiona demoras en la tramitación de los juicios. Por el contrario, y salvando algunas excepciones, no se evidencian demoras relevantes ocasionadas por la actividad judicial ni por la defensa del Estado Nacional.

18.  Los "errores y pasos procesales cuestionables" citados por el Dr. Naveira en el párrafo 14 de su declaración jurada, deberían considerarse como simples errores que pueden ocurrir –y de hecho ocurren- en cualquier tribunal de justicia como por ejemplo, enviar un archivo a una oficina o persona equivocada. Entiendo que dichos errores ocurren sin mala intención de ninguna de las partes.

19.  Finalmente, no obstante que las acciones iniciadas por Repsol contra YPF no se encuentran bajo mi competencia, del acceso que he tenido a las mismas surge que Repsol -con fundamento en la ausencia de una OPA conforme a los Estatutos de YPF- impugna las diferentes decisiones asamblearias tomadas con la nueva conformación del directorio de YPF.

---

[8] REPSOL S.A. c/YPF S.A. s/ Ordinario (Nulidad de Asamblea 04/06/12), REPSOL S.A. c/YPF S.A. s/Ordinario (Nulidad de Asamblea 17/07/12), REPSOL S.A. c/YPF S.A. s/Ordinario (Nulidad de Asamblea 13/09/12) y REPSOL BUTANO S.A. c/YPF GAS S.A. s/Ordinario (Nulidad de Asamblea 06/06/12), todos en trámite por ante el Juzgado Nacional de Primera Instancia en lo Comercial N° 3, Secretaría N° 6.

20.	Concretamente, en la causa "Repsol S.A. c/YPF S.A. s/nulidad de asamblea" (Expediente N° 103.144 - N° 19.789/2012), en trámite por ante el Juzgado Nacional en lo Comercial N° 3, Secretaría N° 6 (casos N° 6 y 2 –respectivamente- del Anexo B de mi declaración anterior), Repsol basa su reclamo, entre otros fundamentos, en la afirmación legal de que "ha habido incumplimiento por parte del Estado Nacional de su obligación de lanzar la OPA" de las acciones de YPF; dicha OPA debe supuestamente lanzarse conforme a los términos de los artículos 7 y 28 del Estatuto Social. Repsol utilizó la misma línea argumentativa en la causa "Repsol S.A. c/ YPF S.A. s/ ordinario (Expediente N° 26.307/2012) y en "Repsol S.A. y otros c/ YPF S.A. s/ ordinario" (Expediente N° 103.553), que corresponden a los casos N° 4 y 5 –respectivamente- del Anexo B de mi anterior declaración.

Declaro bajo pena de perjurio conforme a las leyes de los Estados Unidos de Norte América que lo que antecede es verdadero y correcto de acuerdo a mi leal saber y entender.

En Buenos Aires, Argentina, a los __28__ días de agosto de 2013.

[firma]

Carlos Gustavo Pistarini

[sello:] Dr. CARLOS GUSTAVO PISTARINI
Director del Departamento de Control y Gestión Judicial

-7-