UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REPSOL YPF, S.A. and TEXAS YALE          :
CAPITAL CORP., personally and on
behalf of similarly placed parties,      :

                Plaintiffs,          :          12 Civ. 3877 (TPG)

       - against -                   :

THE ARGENTINE REPUBLIC,                  :

             Defendant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Edward Scarvalone
DOAR RIECK KALEY & MACK
217 Broadway, 7th Floor
New York, NY 10007
Tel. (212) 619-3730

Jonathan A. Willens
JONATHAN A. WILLENS LLC
217 Broadway, 7th Floor
New York, NY 10007
Tel. (212) 619-3749

*Attorneys for Defendant*
*The Republic of Argentina*

## TABLE OF CONTENTS

ARGUMENT ...................................................................................................................1

POINT I:      THE REPUBLIC IS IMMUNE FROM SUIT UNDER THE FSIA .........................1

    A.  The Commercial-Activity Exception's "First Clause" ...................................1

    B.  The Commercial-Activity Exception's "Third Clause" ................................4

POINT II:     THE ACT OF STATE DOCTRINE REQUIRES DISMISSAL ...............................6

POINT III:    VENUE IS IMPROPER  ....................................................................................7

POINT IV:   THE COMPLAINT SHOULD BE DISMISSED ON
GROUNDS OF *FORUM NON CONVENIENS*....................................................8

POINT V:     THE COMPLAINT FAILS TO STATE A CLAIM .................................................14

CONCLUSION...............................................................................................................17

# TABLE OF AUTHORITIES

**CASES:**

*Aguinda v. Texaco, Inc.,*
   303 F.3d 470 (2d Cir. 2002) ...................................................................................... 13 fn

*Alcon Shareholder Litig.,*
   719 F. Supp. 2d 263 (S.D.N.Y. 2010) ....................................................................... 13 fn

*Altmann v. Republic of Austria,*
   317 F.3d 954 (9th Cir. 2002) ...................................................................................... 13 fn

*In re Arbitration Between Monegasque De Reassurances S.A.M. (Monde Re)*
   *v. Nak Naftogaz of Ukraine,*
   311 F.3d 488 (2d Cir. 2002) .................................................................................... 13, 14

*Bhatnagar v. Surrendra Overseas Ltd.,*
   52 F.3d 1220 (3d Cir.1995) ........................................................................................ 13 fn

*Blanco v. Banco Indus. de Venezuela, S.A.,*
   997 F.2d 974 (2d Cir.1993) ........................................................................... 11, 13 fn, 14

*Braka v. Bancomer, S.N.C.,*
   762 F.2d 222 (2d Cir. 1985) ........................................................................................... 7

*Broadcasting Rights Int'l Corp. v. Societé du Tour de France,*
   708 F. Supp. 83 (S.D.N.Y.1989) ............................................................................... 13 fn

*Commercial Bank of Kuwait v. Rafidain Bank,*
   15 F.3d 238 (2d Cir. 1994) ........................................................................................... 6 fn

*Drexel Burnham Lambert GrP. v. Comm. of Receivers for A.W. Galadari,*
   473 F.3d 463 (2d Cir. 2007) ............................................................................................. 5

*EM Ltd. v. Republic of Argentina,*
   473 F.3d 463 (2d Cir. 2007) ............................................................................................. 1

*In re Factor VIII or IX Concentrate Blood Products Litig.,*
   484 F.3d 951 (7th Cir. 2007) ........................................................................................ 13 fn

*First Nat. City Bank v. Banco Nacional de Cuba,*
   406 U.S. 759 (1972) ........................................................................................................ 6

*Garb v. Republic of Poland,*
   440 F.3d 579 (2d Cir. 2006) ............................................................................................. 5

*Gibbons v. Udaras na Gaeltachta,*
    549 F. Supp. 1094 (S.D.N.Y. 1982)........................................................................ 4

*Gilstrap v. Radianz Ltd.,*
    443 F. Supp. 2d 474 (S.D.N.Y. 2006)................................................................. 13 fn

*Guirlando v. T.C. Ziraat Bankasi A.S.,*
    602 F.3d 69 (2d Cir. 2010)............................................................................ 3, 3 fn, 6

*Gulf Ins. Co. v. Glasbrenner,*
    417 F.3d 353 (2d Cir. 2005) ........................................................................... 7

*Gulf Oil Co. v. Gilbert,*
    330 U.S. 501 (1947) ....................................................................................... 10, 11

*Hanil Bank v. PT. Bank Negara Indonesia (Persero),*
    148 F.3d 127  (2d Cir. 1998)......................................................................... 6 fn

*Hidrovia, S.A. v.Great Lakes Dredge & Dock Corp.,*
    No. 02 C 5408, 2003 WL 2004411 (N.D. Ill. Apr. 28, 2003) ......................... 12

*Human Rights in China v. Bank of China,*
    No. 02 Civ. 4361 (NRB), 2003 WL 22170648 (S.D.N.Y. Sept. 18, 2003)  ............... 17 fn

*Iragorri v. United Techs. Corp.,*
    274 F.3d 65 (2d Cir. 2001)............................................................................ 9

*Konowaloff v. Metro. Museum of Art,*
    702 F.3d 140 (2d Cir. 2012)........................................................................... 7

*MasterCard Int'l v. Argencard Sociedad Anonima,*
    No. 01 Civ. 2027 (JGK), 2002 WL 432379 (S.D.N.Y. Mar. 20, 2002) .................... 12

*Murray v. British Broadcasting Corp.,*
    81 F.3d 287 (2d Cir. 1996)...................................................................... 10, 11, 13 fn

*NML Capital, Ltd. v. Republic of Argentina,*
    699 F.3d 246 (2d Cir. 2012)........................................................................... 14 fn

*PT United Can Co. v. Crown Cork & Seal Co., Inc.,*
    138 F.3d 65 (2d Cir.1998).............................................................................. 14

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981)..................................................................................... 9, 11 fn

*Potomac Capital Inv. Corp. v. KLM Royal Dutch Airline,*
    97 Civ. 8141 (AJP) (RLC), 1998 WL 92416 (S.D.N.Y. Mar. 4, 1998) ...................... 13 fn

*Pollux Holding Ltd. v. Chase Manhattan Bank,*
    329 F.3d 64 (2d Cir. 2003)................................................................................. 9

*Red Rock Holdings, Ltd. v. Union Bank Trust Co.,*
    No. 97 Civ. 5008 (JGK), 1998 WL 474094 (S.D.N.Y. Aug. 11, 1998),
    *aff'd as modified*, 181 F.3d 83 (2d Cir. 1999) ........................................... 13 fn

*Republic of Argentina v. Weltover, Inc.,*
    504 U.S. 607 (1992) ................................................................................ 5 fn, 6

*Rogers v. Petroleo Brasileiro, S.A.,*
    673 F.3d 131 (2d Cir. 2012)................................................... 3, 3 fn, 5, 6, 7

*Rong v. Liaoning Province Gov't,*
    452 F.3d 883 (D.C. Cir. 2006) ..................................................................... 1

*Satz v. McDonnell Douglas Corp.,*
    244 F.3d 1279 (11ᵗʰ Cir. 2001) ............................................................ 12, 13 fn

*Saudi Arabia v. Nelson,*
    507 U.S. 349 (1993)..................................................................................... 2

*Shapiro v. Rep. of Bolivia,*
    930 F.2d 1013 (2d Cir. 1991), *cert. denied*, 464 U.S. 815 (1993) ............... 2, 4

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,*
    549 U.S. 422 (2007) ................................................................................... 9

*Sussman v. Bank of Israel,*
    801 F. Supp. 1068 (S.D.N.Y. 1992), *aff'd*, 990 F.2d 71 (2d Cir. 1993) .......... 13

*Tonoga, Ltd v. Ministry of Public Works & Housing of the Kingdom of Saudi Arabia,*
    135 F. Supp. 2d 350 (N.D.N.Y. 2001) ...................................................... 4, 8

*United Bank for Africa PLC v. Coker,*
    94 Civ. 655 (TPG), 2003 WL 22741575 (S.D.N.Y. Nov. 18, 2003) ............... 9

*Van Der Velde v. Philip Morris Inc.,*
    No. 02 Civ. 783 (BSJ), 2004 WL 48891 (S.D.N.Y. Jan. 9, 2004)............... 13 fn

*Warter v. Boston Securities, S.A.,*
    380 F. Supp. 2d 1299 (S.D. Fla. 2004) ...................................................... 12

**STATUTES:**

28 U.S.C. § 1391(f) ................................................................................... 3 fn, 7

28 U.S.C. §§ 1602-1611 (Foreign Sovereign Immunities Act) ........................... *passim*

28 U.S.C. § 1603(d) ............................................................................... 2, 3 fn

28 U.S.C. § 1603(e) ...................................................................................... 2

28 U.S.C. § 1605(a)(2) .................................................................................. 1

28 U.S.C. § 1605(a)(3) ............................................................................. 2 fn

**LEGISLATIVE HISTORY:**

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 ................................. 3, 3 fn

## INTRODUCTION

In this action, Repsol is asking the Court to impose a judgment of "billions" of dollars upon the taxpayers of Argentina because the Republic took control of the nation's largest oil company from Repsol without also compensating the company's shareholders. Under the Foreign Sovereign Immunities Act ("FSIA") and Act of State Doctrine, however, the Republic's decision is beyond the review power of a U.S. court. Such review is wholly unnecessary here, in any event, because Repsol is asserting the same claim in at least three lawsuits pending in Argentina. Repsol is simply forum-shopping. The Complaint should be dismissed.[1]

## ARGUMENT

## I.    THE REPUBLIC IS IMMUNE FROM SUIT UNDER THE FSIA

### A.  The Commercial-Activity Exception's "First Clause"

Plaintiffs' claim is not "based upon a commercial activity carried on in the United States by [the Republic]," as the statute requires. 28 U.S.C. § 1605(a)(2). Rather, the claim is based on a sovereign decision made by the Republic, after having initiated the Expropriation Process over the YPF shares – a quintessential exercise of sovereign power – not to make a tender offer. Brf. 8-9. Obligations that arise from the exercise of sovereign power are outside the scope of the commercial-activity exception, *id.* (citing *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 482 (2d Cir. 2007)), as are actions that flow from the exercise of such sovereign power. *Rong v. Liaoning Province Gov't*, 452 F.3d 883, 889 (D.C. Cir. 2006) (while post-expropriation removal of corporate officer and appointment of new officers may "seem commercial" in nature, "all of these acts flow from the [defendant's] 'state assets' declaration – an act that can be taken only by a sovereign"). Plaintiffs ignore this principle in their brief, *see*

---

[1]    The Republic incorporates the defined terms used in its moving brief ("Brf."). For purposes of this motion, the Republic is neither disputing nor conceding any allegation. Brf. 3 n.3. Plaintiffs' assertion that the Republic "admits" Complaint allegations, *see* Plaintiffs' Opposition Brief ("Opp.") at 1, is therefore incorrect.

Opp. 3-15, and thus concede it.  Because the Republic's decision is not actionable as commercial activity, the FSIA's commercial-activity exception cannot be satisfied and the Court need not examine plaintiffs' contentions any further.[2]

In any event, plaintiffs fail to show that their Complaint is based on commercial activity in the United States.  Effectively admitting the weakness of their jurisdictional argument, plaintiffs rely on actions by the Republic that purportedly constitute a "regular course of commercial conduct" within the meaning of 28 U.S.C. § 1603(d), *see* Opp. 4-6, such as the Republic's "raising capital" in the U.S. through the privatizing of YPF in 1993, *see id*. at 5, 8. But plainly, the Complaint is not "based upon" the raising of capital in 1993, but rather – as plaintiffs concede, *see* Opp. 6 – is based upon the Republic not making a tender offer 20 years later when the Republic expropriated the YPF shares.  As was true in *Saudi Arabia v. Nelson*, 507 U.S. 349, 357-58 (1993), the commercial activities cited by plaintiffs may have "led to the conduct that eventually injured [plaintiffs]," but "they are not the basis for [plaintiffs'] suit."

Nor does it avail plaintiffs' jurisdictional argument to contend that the Republic "enter[ed] into a contract" with YPF shareholders through the By-Laws, Opp. 5, 8-9, or to cite the Republic's alleged "failure to make a tender offer [] in breach of its contractual obligations," *id*. at 6.  Neither of these acts has the requisite nexus with the United States.  The FSIA requires, under the first clause of the commercial activity exception, that the action be based upon commercial activity "that had 'substantial contact' with the United States."  *Nelson*, 507 U.S. at 356 (quoting 28 U.S.C. § 1603(e)).  This "substantial contact" standard requires "a tighter nexus than the 'minimum contacts' standard for due process."  *Shapiro v. Rep. of Bolivia*, 930 F.2d 1013, 1019 (2d Cir. 1991), *cert. denied*, 464 U.S. 815 (1993), and "reflect[s] a degree of contact

---

[2]   Indeed, if the law were otherwise, then the FSIA's distinction between sovereign and commercial acts would be negated.  This distinction is especially important in the context of expropriation, which is the subject of a separate jurisdictional provision, *see* 28 U.S.C. § 1605(a)(3), that would otherwise be circumvented.

beyond that occasioned simply by U.S. citizenship or U.S. residence of the plaintiff, H.R. Rep. No. 94-1487 at 17 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6616.  Such "substantial contact" with the U.S. is lacking here.  The Bylaws allegedly giving rise to a contractual obligation *see* Opp. 8-9, are those of a company (YPF) organized under Argentine law with its headquarters, employees, assets and common stock located within Argentina, *see* Cplt. ¶ 8.  As for the alleged nonperformance with the Bylaws, the decision by a foreign sovereign not to perform is an act that occurs in the foreign state, and is not an act in the United States.  *See* Brf. *at* 9-10 (citing *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 138 (2d Cir. 2012); *Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69, 76 (2d Cir. 2010)).  Plaintiffs' attempt to distinguish *Rogers* and *Guirlando, see* Opp. 11, is unavailing.[3]

    In any event, the Bylaws do not require the Republic to make a tender offer at all, *see* Brf. Point V.A and *infra* at 14-17, let alone make a tender offer in the United States.  Bylaws § 7(f), upon which plaintiffs rely heavily, *see* Opp. 9, refers generally to "the jurisdictions where the takeover bid takes place" – without specifying any particular jurisdiction, *see id.*  This hardly demonstrates a contractual commitment to make a tender offer in the United States.  The notice provision, Bylaws § 7(f)(iv), does not require a tender offer in the U.S., and Repsol's speculation that "the offer would have occurred in the locations where it was announced," Opp. 9, does not

---

[3]    Plaintiffs contend that *Rogers* and *Guirlando* can be distinguished because those decisions concerned the second and third clauses, respectively, of the commercial-activity exception, and the use of the term "act" therein. Opp. 11. This contention, however, ignores the FSIA's definition of "commercial activity" to encompass "a particular commercial transaction or act," as well as a "regular course of commercial conduct."  28 U.S.C. § 1603(d).  Since plaintiffs' claim is not based upon a regular course of commercial conduct, *see supra* at 2, this necessarily means that their claim stands or falls on whether the Complaint alleges "a particular commercial . . . act" in the United States – which renders plaintiffs' attempt to distinguish *Rogers* and *Guirlando* unavailing.

    Similarly without merit is plaintiffs' invocation of the FSIA's venue provision, 28 U.S.C. § 1391(f). Plaintiffs' labeling of the Republic's decision not to perform an act as an "omission" within the meaning of the venue provision, and contending that the Republic's jurisdictional argument would render § 1391(f) "meaningless," *see* Opp. 11, is foreclosed by *Rogers*, which implicitly found otherwise in holding that a sovereign's decision "not to perform" is an act occurs in the foreign state – not in the United States.  Moreover, there is nothing in the legislative history supporting plaintiffs' venue contention.  *See* H.R. Rep. 94-1487 at 26-27, reprinted in 1976 U.S.C.C.A.N. at 6630-31.

change the plain meaning of the provision.[4]  Because plaintiffs fail to demonstrate that the

tender-offer obligation was to be performed in the U.S., the cases on which plaintiffs rely, *see*

Opp. 6, are inapposite.  *See Tonoga, Ltd v. Ministry of Public Works & Housing of the Kingdom*

*of Saudi Arabia*, 135 F. Supp. 2d 350, 357 (N.D.N.Y. 2001) ("significant portions of the

guarantee were to be performed in this country"); *Gibbons v. Udaras na Gaeltachta*, 549 F.

Supp. 1094, 1114-15 (S.D.N.Y. 1982) (joint venture agreement required plaintiffs' performance

to take place in the U.S.).

Nor can plaintiffs establish the requisite substantial contact with the U.S. by positing

that payment to holders of U.S. ADSs who chose to accept the tender offer "would have taken

place in the United States."  Opp. 10 (citing New York law).  There is nothing in the Bylaws

that requires that payment be made in the U.S., and plaintiffs cite to no provision of the Bylaws

incorporating the commercial law of any particular jurisdiction.  Moreover, the notion that

jurisdiction is determined by the happenstance of where a holder of ADSs happens to reside is

contradicted by *Shapiro* and the FSIA's legislative history.  *See supra* at 2-3.

### B.  The Commercial-Activity Exception's "Third Clause"

Plaintiffs' lawsuit is not based upon an act outside the U.S. that was taken "in

connection with a commercial activity" of the Republic elsewhere that caused a direct effect in

the U.S.  *See* Brf. 11-14.  While the Republic's decision not to make a tender offer plainly

occurred outside the U.S. (it occurred in Argentina, as plaintiffs concede, *see* Opp. 12),

plaintiffs fail to show that this decision was "in connection with" commercial activity

elsewhere.  Indeed, the decision was made in connection with the Republic's taking control

---

4   Similarly unsupported is the assertion that the Bylaws require compliance with the rules of the New York Stock Exchange and the Securities and Exchange Commission (which are purportedly "incorporated into the Bylaws").  *See* Opp. 10.  Here, too, plaintiffs cite no provision of the Bylaws that so specifies.  *See id*.  Indeed, the only securities regulator referenced in the Bylaws is the Argentine Securities Exchange Commission, which is the sole entity endowed with the power to authorize any takeover bid.  *See* By-Laws § 7(f)(vii)).

over Repsol's YPF shares through the Expropriation Process, as the Complaint alleges.  *See*
Cplt. ¶ 3 (citing "Argentina's failure to launch a tender offer despite having retaken control
over YPF").  Expropriation is a quintessential sovereign activity, not a commercial activity.
Brf. 11.  The contention that the Republic's 2012 decision not to launch a tender offer was "in
connection with" actions taken by the Republic twenty years ago in taking YPF public and
issuing stock, *see* Opp. 12, not only contradicts plaintiffs' own Complaint allegations, but it
ignores the Second Circuit's instruction that the "in connection with" requirement should be
interpreted "narrowly," *Garb v. Republic of Poland*, 440 F.3d 579, 587 (2d Cir. 2006), and that
a complained-of act that has "only an attenuated connection" to commercial activity by the
sovereign, *Drexel Burnham Lambert Grp. v. Comm. Of Receivers for A.W. Galadari*, 12 F.3d
317, 330 (2d Cir. 1993), does not satisfy the statute, *id.*

In addition, plaintiffs fail to demonstrate that the Republic's alleged nonperformance
"cause[d] a direct effect in the United States," as the statute requires.  *See* Brf. 11-12.  The
direct effect requirement is satisfied only where the contract requires performance to be made
in the U.S. or gives the obligee the right to designate performance here and the obligee so
designates.  *Id.* at 12; *Rogers*, 673 F.3d at 139-40.  The Bylaws at issue here do not so provide.
*See supra* at 3-4.  Plaintiffs attempt to gloss over this weakness in their argument by pointing
to actions that the Republic would be obligated to take in the U.S. if a tender offer were made
here, *see* Opp. 13, but that is different from establishing that the Bylaws require the tender
offer *itself* to take place in the U.S.  Indeed, each of the cases upon which plaintiffs rely, *see*
Opp. 13, turned on the fact that the contract at issue either explicitly required performance to
be made in the U.S. or gave the obligee the right to designate performance in the U.S.[5]

---

[5]   *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618-19 (1992) (Because "[plaintiffs] had
designated their accounts in New York as the place of payment . . . New York was . . . the place of performance for

Finally, the "direct effect" test is not satisfied by the possibility that some YPF shareholders (or ADS holders) might reside in the U.S., and that payment for any shares tendered by those shareholders could take place in the U.S., *see* Opp. 14.  Such an attenuated causal relationship between the Republic's decision and the purported effect in the U.S. is not "direct" because it does not "follow[] as an immediate consequence" of the Republic's decision, *Weltover*, 504 U.S. at 618, but rather flows through an "intervening element" between act and effect, *Guirlando*, 602 F.3d at 74-75 – namely the happenstance of where a particular YPF shareholder (or ADS holder) resides.  *See* Brf. 11-12.  Plaintiffs' argument also flies in the face of the Second Circuit precedent cited above, *see supra* at 5 & 5 n.5.

## II.   THE ACT OF STATE DOCTRINE REQUIRES DISMISSAL

The Act of State Doctrine "*precludes any review whatever* of the acts of the government of one sovereign State done within its own territory by the courts of another sovereign State." *First Nat. City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 763 (1972) (emphasis added). The doctrine applies here because all of the actions complained-of in the Complaint – the taking control of YPF shares, and the decision not to make a tender offer for the remaining YPF shares – are sovereign acts that occurred in Argentina.  Brf. 14, 17 n. 15; *Rogers*, 673 F.3d at 138.  While plaintiffs deny that they challenge the validity of an "official act" by the Republic, *see* Opp. 16, the Complaint cannot plausibly be read any other way, inasmuch as it challenges the Republic's decision to take control over YPF through Executive Decree 530/2012 and the Hydrocarbons Sovereignty Law, *see* Brf. 3-5, without acquiring the remaining YPF shares via tender offer.  *See* Cplt. ¶ 3.  A finding that the Republic was obligated to comply with the

---

[defendant's] ultimate contractual obligations"); *Hanil Bank v. PT. Bank Negara Indonesia (Persero)*, 148 F.3d 127, 132  (2d Cir. 1998) ("Although the letter of credit did not itself specify New York as the place of payment, it authorized [Hanil Bank] to designate the place of payment," and the Bank "designated payment to its bank account in New York"); *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 241 (2d Cir. 1994) ("the agreements at issue . . . require the Iraqi Banks to make payments in U.S. dollars into accounts in New York City").

Bylaws' tender offer requirement necessarily requires finding the Republic's official acts invalid – a finding this Court cannot make under the Act of State Doctrine.

In an act of desperation, plaintiffs argue that the Act of State Doctrine is not appropriate to consider on a motion to dismiss, Opp. 15 – an argument that the Second Circuit has flatly rejected. *Konowaloff v. Metro. Museum of Art*, 702 F.3d 140, 146 (2d Cir. 2012). Likewise, plaintiffs rely on a so-called "commercial activity" exception to the Act of State Doctrine, *see* Opp. 17, that does not exist. *Braka v. Bancomer, S.N.C.*, 762 F.2d 222, 225-26 (2d Cir. 1985) ("We do not read the dicta in [our prior] cases as an adoption of the suggested exception"). Even if such exception existed, it would not apply here because the complained-of actions are sovereign, not commercial. *See* Point I, *supra*.

## III.   <u>VENUE IS IMPROPER</u>

The Complaint does not allege that "a substantial part of the events or omissions giving rise to the claim" occurred here, as 28 U.S.C. § 1391(f) requires. Brf. 17-19. All of the relevant events or omissions – *i.e.*, the taking control of YPF shares, and the resulting decision not to make a tender offer for the remaining shares – occurred in Argentina. *Id.* at 18; *Rogers*, 673 F.3d at 138.

Plaintiffs respond by recycling their arguments about the FISA's commercial activity exception, *see supra* at 2-6. But the marketing of YPF shares in the U.S. in connection with the 1993 public offering, *see* Opp. 17-18, is neither "significant" nor "material" to plaintiffs' claim, as the venue statute requires. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005); Brf. 18. Plainly, plaintiffs would be asserting their claim that a tender offer is required under the Bylaws regardless of whether the YPF shares had previously been marketed in the U.S. or not.

It is irrelevant that the purported breach of the Bylaws resulted in nonperformance of certain acts (*i.e.*, the publication of tender-offer notice, the distribution of the offer to the NYSE,

and the payment of compensation to tendering holders of ADSs) in New York.  Opp. 18.  These acts are distinct from, and ancillary to, the alleged tender-offer obligation underlying plaintiffs' claim, *see supra* at 3-4, thus rendering the *Tonoga* decision inapposite.  *See* 135 F. Supp. 2d at 359 ("a substantial portion of the alleged guarantee was to be performed in this district").

Simply put, there is only one alleged "event or omission" underlying Repsol's claim:  the Republic's decision not to make a tender offer.  That decision occurred in Argentina, not in the United States, and certainly not in New York.  Venue is therefore improper here.

## IV.   THE COMPLAINT SHOULD BE DISMISSED ON GROUNDS OF *FORUM NON CONVENIENS*

As plaintiffs' own expert confirms, pending in Argentina are a series of lawsuits brought by Repsol that rest upon the same legal contention upon which the instant Complaint depends – *i.e.*, that the Bylaws require a tender offer when the Republic gained control over YPF via the Expropriation Process.  Affidavit of Gustavo Naveira ("Naveira Aff.") ¶¶ 58-59; *see also* Pistarini Moving Dec. ¶ 4, Exh. B; Pistarini Reply Dec. ¶ 20.  This action is thus duplicative of claims already *sub judice* in Argentina.  Repsol is simply forum-shopping to gain an advantage in its global battle against the Republic, *see* Brf. 1 & 1 n.2.[6]

Parallel lawsuits over the same Bylaw provisions in the U.S. and Argentina would subject the parties, witnesses, and the courts to duplicative discovery, deposition and courtroom testimony;  burden two judicial systems with the obligation to supervise and preside over complex litigation involving the Expropriation Process over the YPF shares;  and create the needless risk of inconsistent outcomes.  These are the very risks and burdens of duplicative

---

[6]   The cases in question are *Repsol S.A. v. YPF S.A* (Case No: 103,144 - 19789/2012), *Repsol S.A. v.YPF S.A.* (Case No: 26307/2012), and *Repsol S.A. v.  v. YPF S.A.* (Case No: 103553) , all of which are before the National Commercial Court of First Instance No. 3, Division No. 6.  *See* Pistarini Reply Dec. ¶ 20; Pistarini Dec. Exh. B. Repsol is claiming in these lawsuits that "the Argentine State . . . violated Section 7(h) of the YPF Bylaws" by exercising the voting rights in connection with the expropriated YPF shares without first "carr[ying] out" or "launching" the tender offer.  Naveira Aff. ¶¶ 58-59; *see also* Pistarini Reply Dec. ¶ 20.

litigation that the case law (and this Court) have recognized as warranting *forum non conveniens*

dismissal. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435-46 (2007);

*United Bank for Africa PLC v. Coker*, 94 Civ. 655 (TPG), 2003 WL 22741575, *4 (S.D.N.Y.

Nov. 18, 2003) (citing "duplicative proceedings and the risk of inconsistent judgments").[7]

Under these circumstances, it is manifestly "far more convenient to resolve all claims in

one trial." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 259 (1981).  The proper location for that

litigation is Argentina, given that Argentina is the center of gravity of this controversy relating to

that nation's state-controlled (and largest) energy company.  Brf. 19-20.  Dismissal on *forum non*

*conveniens* grounds is fully consistent with the *forum non conveniens* "balancing inquiry,"

*Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001), that the case law requires.

**<u>Plaintiffs' choice of forum merits limited deference</u>**.  Repsol (a Spanish company) and

Texas Yale are both headquartered elsewhere and have no significant New York ties.

Accordingly, there is little reason to believe that plaintiffs' choice of forum was made for

convenience, and their choice "deserves less deference." *Piper Aircraft*, 454 U.S. at 255-56; Brf.

20.  While plaintiffs insist that they had "legitimate reasons" for bringing this lawsuit in New

York, Opp. 19, the lawsuit's asserted contacts with New York are wholly insubstantial, *see supra*

at Point I, and plaintiffs admit that certain procedural rules in the U.S. are advantageous to them,

*see* Opp. 22, while others in Argentina are disadvantageous, *see id*. at 22-23; *see also infra* at 13-

14.  The courts have identified precisely this type of rules-preference as evidence of forum-

shopping.  *Iragorri*, 274 F.3d at 72; *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64,

71 (2d Cir. 2003) (noting possibility of "forum-shopping for a higher damage award or some

other litigation advantage").  Plaintiffs' choice of forum thus merits limited deference.

---

[7]   That Repsol may not have asserted a claim for damages or injunctive relief in the Argentina lawsuits, *see* Naveira Aff. ¶ 59, does not negate the fact that these lawsuits depend on the same contract-interpretation issue underlying the Complaint's claim – *i.e.*, that the Bylaws' tender offer obligation has been triggered by the Republic's expropriation of a controlling interest in YPF.  *See supra* at 8 n.6.

**Balancing of "public interest factors" favors dismissal in favor of Argentina.**  Each

of the public interest factors, *see Gulf Oil Corp. v. Gilbert*, 330 U.S. at 501, 508-09 (1947),

weighs in favor of litigating this case in Argentina.  Plainly, Argentina has the greater interest in

resolving disputes concerning YPF – a state-controlled company that is the nation's largest

producer of oil and gas, and upon which the nation relies for meeting its energy needs.  Brf. 24-

25.  The events at issue are at the center of one of the largest and most publicly scrutinized acts

taken by the Republic in recent memory, namely, the exercise of sovereign power to initiate the

Expropriation Process over YPF shares.  *Id.* at 3-4.  This case therefore concerns the classic

"localized controvers[y]" that is appropriately "decided at home."  *Gulf Oil Corp.*, 330 U.S. at

509.

Moreover, plaintiffs allege that they are entitled to an extraordinarily large judgment.

Opp. 22 ("billions of dollars").  An adverse verdict could potentially have severe implications for

the Republic and its taxpayers, and would drain resources from the Argentine treasury that would

otherwise be used running the country.  The anomaly – and inappropriateness – of a U.S. court

decision imposing such consequences upon a foreign state in a case centrally involving events in

Argentina is a compelling reason to dismiss the Complaint in favor of an Argentine forum.

Plaintiffs' only response is to try to parse out the alleged Bylaws breach from the

Expropriation Process that gave rise to the alleged breach, *see* Opp. 27, and argue that the

alleged breach "strikes at the heart of the integrity of U.S. financial markets," *id*.  This is gross

overstatement, and is tantamount to arguing for the U.S. as the forum for litigating all corporate

disputes involving foreign issuers whose ADSs trade in the United States.  Such an "attenuated"

connection with the U.S., *Murray v. British Broadcasting Corp.*, 81 F.3d 287, 293 (2d Cir.

1996), does not justify burdening the Court, *id.*, especially given that the dispute is already under

review by courts in Argentina.

Finally, plaintiffs do not dispute that resolution of their lawsuit turns on the application of Argentine law, Brf. 24, and that lawsuits raising the same contract-interpretation issue upon which this lawsuit depends (*i.e.*, whether the Bylaws require the making of a tender offer) are already pending in Argentina, *see supra* at 8.  While U.S. courts are capable of applying Argentine law, Argentina has a much greater interest in the Argentine legal issues (contract, corporate, and expropriation, *see* Declaration of Javier Errecondo, Aug. 28, 2013, ¶¶ 48-61) that are involved here, and the lawsuit's insubstantial relationship with New York provides little reason to burden the Court with these foreign legal issues.  *Murray*, 81 F.3d at 293.

**The "private interest factors."**  The balance of private factors, *Gulf Oil*, 330 U.S. at 508, also weighs in favor of litigating this case in Argentina.  A U.S. trial would unquestionably complicate "access to sources of proof."  *Gulf Oil*, 330 U.S. at 508; Brf. 22-24.  Among other things, every individual and potential witness named in the Complaint is an Argentine,[8] as are the expert witnesses offered by the parties.  The cost and inconvenience of bringing these witnesses to New York from Argentina would be significant.[9]  Brf. 23.  Moreover, all of the witnesses are Spanish speakers whose testimony (both at deposition and at trial) would have to be translated into English, Brf. at 23, thereby imposing "significant cost to the parties and delay to the court."  *Blanco v. Banco Indus. de Venezuela, S.A.,* 997 F.2d 974, 982 (2d Cir.1993).  Also, plaintiffs do not dispute that non-party witnesses in Argentina are beyond the scope of this Court's power, and that obtaining oral and documentary evidence from such witnesses would

---

[8]    *See* Cplt. ¶ 27 (unidentified Argentine representative on YPF board); ¶ 29 (unidentified "YPF management and high-ranking government officials"); ¶ 29 (unidentified "public officials"); *id*. (Province Governor Martín Buzzi); ¶ 30 (Chief Cabinet Minister Juan Manual Abal Medina); ¶ 31 (unidentified Argentine representative on YPF board); ¶ 33 (Julio De Vido, appointed intervenor over YPF); ¶ 34 (unidentified "government officials"); ¶ 37 (Deputy Economy Minister Axel Kicillof).

[9]    Plaintiffs argue that this obvious burden should be ignored here because the Republic did not provide a list of witnesses that it would call at trial, Opp. 26, but the Supreme Court has expressly rejected such a requirement in the context of a *forum non conveniens* motion.  *Piper Aircraft*, 454 U.S. at 258.

require their voluntary cooperation.  Brf. 23-24.  Argentine courts would be in a much better position to compel process within Argentina's borders.  *Id*. at 23-24.

Plaintiffs try to minimize these problems by characterizing their lawsuit as being nothing more than an exercise in contract interpretation.  *See* Opp. 26.  But their own Complaint allegations date back to the 1993 IPO, *see* Cplt. ¶¶ 21-23, and include a long course of conduct leading up to the initiation of the Expropriation Process on April 16, 2012, *see id*. ¶¶ 24-31, which conduct underlies one of the claims in the Complaint, *see id*. ¶¶ 71-75.  These allegations necessarily implicate a host of additional potential witnesses and categories of potentially relevant documents, all located in Argentina.

**Argentina is an adequate alternative forum**.  Federal courts have routinely held Argentina to be an adequate forum, Brf. 22 & 22 n.17, and plaintiffs cite no case to the contrary.

Instead, Plaintiffs raise a litany of complaints regarding the Argentine judicial system, *see* Opp. 20-24, that do not suffice to establish an alternative forum inadequate.  Indeed, the very complaints that plaintiffs raise have previously been *rejected* as a basis for finding Argentina inadequate.  *See Satz v. McDonnell Douglas Corp*., 244 F.3d 1279, 1283-84 (11th Cir. 2001) ("plaintiffs' concerns about Argentine filing fees, the lack of discovery in Argentine courts, and their fear of delays in the Argentine courts do not render Argentina an inadequate forum"); *Warter v. Boston Securities, S.A*., 380 F. Supp. 2d 1299, 1311 (S.D. Fla. 2004) ("[e]ven if resolution of the instant case in Argentina would require up to five years, such time is insignificant for purposes of evaluating the adequacy of an alternate forum"); *Hidrovia, S.A. v. Great Lakes Dredge & Dock Corp.,* No. 02 C 5408, 2003 WL 2004411, *4 (N.D. Ill. Apr. 28, 2003) ("[t]he fact that Argentine evidence-gathering tools may be different in timing and scope from those available here does not make Argentina an inadequate forum"); *MasterCard Int'l v. Argencard Sociedad Anonima*, No. 01 Civ. 2027 (JGK), 2002 WL 432379, *7 (S.D.N.Y. Mar.

20, 2002) (argument that "recent turmoil in Argentina has affected the judicial process in Argentina" failed to show that plaintiff would not get fair hearing there).

Moreover, the alleged procedural inadequacies that plaintiffs raise – involving the potential for delay, the lack of a class action procedure akin to Fed. R. Civ. P. 23, and pretrial discovery rules that are less expansive than the U.S., are not only exaggerated, *see* Errecondo Dec. ¶¶ 5-35, 43-46, but the same complaints have been made against countries around the world (including England and France) and have been found insufficient to warrant a finding that an alternative forum is inadequate.[10]

Likewise, the claim that the alternative forum would be biased in favor of a state party, *see* Opp. 23, does not suffice. *See In re Arbitration Between Monegasque De Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine,* 311 F.3d 488, 499 (2d Cir. 2002) ("[]t is hardly unusual . . . for a finding of *forum non conveniens* to be made in favor of the forum of a state whose entity is a party litigant"); *Sussman v. Bank of Israel,* 801 F. Supp. 1068, 1078 (S.D.N.Y.

---

[10]    Thus, "[d]elays in an alternative forum's judicial system are not sufficiently harmful of due process to prevent dismissal on the ground of *forum non conveniens.*" *Broadcasting Rights Int'l Corp. v. Société du Tour de France,* 708 F. Supp. 83, 85 (S.D.N.Y.1989) (France); *accord  Satz,* 244 F.3d at 1283-84 (Argentina); *Bhatnagar v. Surrenda Overseas Ltd.,* 52 F.3d 1220, 1227 (3d Cir.1995) (India).

Likewise, the lack of a class action procedure "is not so burdensome as to deprive the plaintiffs of an effective alternative forum." *Aguinda v. Texaco, Inc.,* 303 F.3d 470, 478-79 (2d Cir. 2002) (Ecuador); *Gilstrap v. Radianz Ltd.,* 443 F. Supp. 2d 474, 482 (S.D.N.Y. 2006) (England), *aff'd,* 233 F. App'x 83 (2d Cir. 2007).  This is especially true where, as here, any injunction order compelling a tender offer would redound to the benefit of all YPF shareholders.

Similarly, the imposition of court fees, or the requirement that the losing party pay attorneys' fees, does not warrant a finding that a forum is inadequate.  *Altmann v. Republic of Austria,* 317 F.3d 954, 972-73 (9th Cir. 2002) (court fees; citing cases); *Red Rock Holdings, Ltd. v. Union Bank Trust Co.,* 97 Civ. 5008 (JGK), 1998 WL 474094, *6  (S.D.N.Y. Aug. 11, 1998), *aff'd as modified,* 181 F.3d 83 (2d Cir. 1999) (court fees; Israel); *In re Factor VIII or IX Concentrate Blood Products Litig.,* 484 F.3d 951, 958 (7th Cir. 2007) ("loser pays" rule; England); *Van Der Velde v. Philip Morris Inc.,* 02 Civ. 783 (BSJ), 2004 WL 48891, *3 (S.D.N.Y. Jan. 9, 2004) (same).  Moreover, there is no claim here that these rules pose "insurmountable barriers to litigation," *Murray,* 81 F.3d at 294, for Repsol, which is a global energy company with vast resources.

Nor does the lack of federal-style discovery demonstrate inadequacy.  *In re Alcon Shareholder Litig.,* 719 F. Supp. 2d 263, 273 (S.D.N.Y. 2010) (citing cases); *Potomac Capital Inv. Corp. v. KLM Royal Dutch Airline,* No. 97 Civ. 8141, 1998 WL 92416, at *5 (S.D.N.Y. Mar. 4, 1998) ("[W]ere a forum considered inadequate merely because it did not provide for federal style discovery, few foreign forums could be considered adequate—and that is not the law") (internal quotation omitted).  As the Second Circuit has held, "the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate." *Blanco,* 997 F.2d at 982.

1992), *aff'd*, 990 F.2d 71 (2d Cir. 1993) ("plaintiffs' preference for an American court cannot be indulged on the basis of an American judge's speculation that his Israeli colleagues would violate their oaths of office").[11]

Nor do the alleged "threats to judicial independence," *see* Opp. 23-24, support a finding of inadequacy. Plaintiffs' declaration on this point, *see* Naveira Aff. ¶¶ 43-55, is little more than conclusory generalization based on second-hand accounts, and is not supported by any competent evidence, as the case law requires. *Monegasque*, 311 F.3d at 499. The only specifics that Mr. Naveira offers in this regard relate to an Argentine statute (Law No. 26,855), which he concedes was recently *struck down* by the Argentine Supreme Court of Justice. *See* Naveira Aff. ¶ 50 & n. 67; Errecondo Dec. ¶¶ 36-42. This clear exercise of judicial independence by the Argentine judiciary undercuts any contention by plaintiffs that the judicial system is so deficient as to warrant the "rare" finding of inadequacy, *PT United Can Co. v. Crown Cork & Seal Co., Inc.,* 138 F.3d 65, 73 (2d Cir.1998); *see also Blanco*, 997 F.2d at 982 ("it is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation").

Finally, it is telling that plaintiff Repsol continues to litigate its YPF-related claims in the courts of Argentina. *See supra* at 8. Repsol plainly believes Argentina to be an adequate forum for resolving these disputes.

## V.      THE COMPLAINT FAILS TO STATE A CLAIM

Repsol argues that the Bylaws' tender-offer obligation is triggered by the Republic's exerting control over YPF via the Expropriation Process, notwithstanding that the term "expropriation" is nowhere used in the Bylaws. *See* Scarvalone Dec. Exh. E. Rather, the

---

[11]      Plaintiffs' assertion of "bias" goes beyond their expert's affidavit, and is factually unsupported. The footnote in *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 253 n. 5 (2d Cir. 2012), upon which plaintiffs rely, refers to instances when Argentine courts declined to enforce certain foreign judgments on grounds of public policy, based on an application of Argentine law – just as the Second Circuit decisions cited in that same footnote vacated (or affirmed vacatur of) attachments based on that court's application of U.S. law.

Bylaws provide that the tender-offer obligation is triggered only by an "acquisition" of YPF shares.  Because the Expropriation Process is not an "acquisition," plaintiffs' claim for breach of contract must be dismissed.  Brf. Point V.A.

Plaintiffs do not dispute that the tender-offer obligation is triggered by an "acquisition," *see* Opp. 29, but argue instead that the Republic has made such an "acquisition" through exercising control over YPF shares.  This argument is contradicted by plaintiffs' own Complaint, however, which concedes that the Republic has merely "expressed [an] *intention to acquire*" a majority of YPF's shares.  *See* Cplt. ¶¶ 3, 61 (emphasis supplied).  Plainly, an "intention to acquire" is not an "acquisition."

Plaintiffs' contention is further undercut by the very Bylaw provisions upon which plaintiffs rely.  *See* Opp. 29-30.  Section 28 repeatedly uses the term "acquisition" (rather than "change in control") to describe the event that triggers the obligation to make a tender offer.[12] So, too, does Section 7(d) – which also refers to the party performing the acquisition as "the purchaser."[13]  There has been no "acquisition" or purchase, however; it is undisputed that the Republic has not acquired or purchased the YPF shares.  Brf. 4; Cplt. ¶¶ 3, 61.  The control that the Republic exercises over the shares is not "as a consequence of" an acquisition, § 28(A), *see supra* at 15 n. 12 (quoting the relevant provision), but rather as a consequence of an Expropriation Process that commenced with Executive Decree 530/2012 and the enactment of the Hydrocarbons Sovereignty Law.  Brf. 3-5; Cplt. ¶ 3; *see also* Errecondo Dec. ¶¶ 58-61.

---

[12]   *See* § 28(A) (providing that tender-offer provisions of Section 7(e) and (f) "shall apply to all *acquisitions* made by the National Government . . . [1] if, as a consequence of such *acquisition*" the Government becomes the owner, or exercises the control, of YPF shares, or [2] if the Government "*acquires*" a certain amount of class D shares); § 28(C) (modifying Section 7(h)'s penalty provision by reference to "the acquisition" and "such acquisition"); § 28(D) (providing that "takeover" provisions of Section 7 apply to "the acquisitions" described in Section 28(A) (emphasis supplied).

[13]   *See* § 7(d) ("to *acquire* shares or securities of [YPF] . . . if, as a result of *such acquisition*, the *purchaser*" becomes holder of or exercises control of class D shares in certain amount) (emphasis supplied)

Plaintiffs attempt to characterize the Republic's assumption of control as an "indirect" acquisition, Opp. 29, but the Bylaws provision upon which plaintiffs rely, Section § 7(i), provides that "indirectly" be construed to include "the *purchaser's* parent companies, the companies controlled by *it*, or that would end up under the control *thereof*" as a consequence of a takeover.  *See* § 7(i) (emphasis supplied).  These repeated references to "the purchaser" demonstrate that the tender offer obligation is triggered by a completed acquisition or "purchase[]" of YPF shares, not by mere control.

Finally, plaintiffs invoke Section 7(h), and its reference to an "indirect" takeover of YPF, *see* Opp. 29.  However, the provision in question is framed in terms of "the purchaser," and whether "the purchaser" had obtained direct control of YPF or if, instead, "the purchaser" had made an "indirect" takeover of YPF through control of its "parent company."  § 7(h).  The repeated references to "the purchaser" further confirm that the tender-offer obligation has not been triggered here, inasmuch as there has been no "purchase" of YPF shares by the Republic. Plaintiffs contend that Section 7(h)'s reference to "indirect" takeover refers to "obtaining control" over YPF, Opp. 29, but that interpretation cannot be harmonized with the provision's consistent reference to "purchaser" – which reference plaintiffs ignore completely, *see id*. – and ignores the provision's clear meaning that an "indirect" takeover of YPF is effected through the purchase of YPF's parent company, as the provision states.  *See also* Errecondo Dec. ¶ 54.

Plainly, if the Bylaws intended to obligate the Republic to make a tender offer merely upon assumption of control (such as the control that results from an expropriation), then surely the Bylaws would not have made the obligation contingent on an "acquisition," or used terms like "acquisition" and "purchaser" that connote a voluntary transaction in which stock changes ownership.  And if the Bylaws intended to make expropriation an event that triggered the tender-offer obligation, the Bylaws would have said so, as other financial instruments have done.  *See*

Errecondo Dec. ¶ 50(f)-(g) (contrasting Bylaws with YPF debt issues that specified consequences of "expropriation") and *id*. Ex. C (YPF 1998 Prospectus for Debt Securities). Plaintiffs cannot override the Bylaws' plain meaning by citing Argentine statutes that purportedly use "acquisition" in a different way than used in the Bylaws, *see* Opp. 30.

     Accordingly, the Bylaws' tender-offer provisions have not been triggered.  Not only must the Complaint's claim for breach of contract be dismissed, but the Complaint's remaining claims must be dismissed as well.  *See* Brf. at Point V.B.[14]

<strong><u>CONCLUSION</u></strong>

     The Complaint should be dismissed in its entirety.

Dated:  New York, New York
       August 29, 2013

| | |
|---|---|
| DOAR RIECK KALEY & MACK | JONATHAN A. WILLENS LLC |
| By:     /s/ Edward Scarvalone      | By:    /s/ Jonathan A. Willens     |
| EDWARD SCARVALONE | JONATHAN A WILLENS |
| 217 Broadway, 7th Floor | 217 Broadway, 7th Floor |
| New York, New York 10007 | New York, New York 10007 |
| Tel.: (212) 619-3730 | Tel. (212) 637-3749 |
| Email: escarvalone@doarlaw.com | Email: jawillens@briefworks.com |

*Attorneys for Defendant*
*The Republic of Argentina*

---

[14]   The anticipatory repudiation claim fails because the tender offer obligation has not yet been triggered, *see supra* at 14-17, and thus there has been no "repudiation" of a contractual obligation.  Likewise, the promissory estoppel claim fails because the Complaint points to no "promise" that was not also made in the Bylaws.  Brf. 27; *see* Opp. 33-34.  The claim for breach of the implied covenant of good faith and fair dealing should be dismissed as duplicative of the contract claim.  *See* Brf. 27-28.  To the extent the claim is not duplicative, there is no jurisdiction under the FSIA because the claim is based entirely on non-commercial acts in Argentina that have no nexus with the U.S., and for which there is no direct effect in the U.S.  *See supra* at Point I.B; *Human Rights in China v. Bank of China*, 02 Civ. 4361 (NRB), 2003 WL 22170648, *7 (S.D.N.Y. Sept. 18, 2003).  Finally, plaintiff Texas Yale, a former shareholder of YPF, Scarvalone Decr., Exh. H – which the Complaint alleges (erroneously) "holds shares in YPF," Cplt. ¶ 6 – must be dismissed because the tender offer obligation was not triggered at a time when Texas Yale was a YPF shareholder.  *See* Brf. 28.